# LOVIE DECHIO *v.* RAYMARK INDUSTRIES, INC., ET AL.
## (AC 29461)

Gruendel, Lavine and West, Js.

Argued December 3, 2008—officially released April 28, 2009

*Philip M. Schulz*, assistant attorney general, with whom were *J. Sarah Posner*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*Maribeth M. McGloin*, for the appellee (named defendant et al.).

*Lucas D. Strunk*, for the appellee (defendant Hartford Insurance Group).

*Eric L. Sussman*, for the appellee (defendant General Reinsurance Corporation).

*Christopher Meisenkothen*, for the appellee (plaintiff).

*Opinion*

WEST, J. This case presents an issue of first impression for this court regarding the time limitation for appeal from a decision of a workers' compensation commissioner (commissioner) to the compensation review board (board) by the second injury fund (fund) under General Statutes § 31-301.[1] Essentially we must answer this question: Is an appeal taken from a supplemental order directing the fund to compensate a plaintiff a timely appeal challenging the findings and awards preceding that order *if* that appeal was taken outside the mandated twenty days from the issuing of the operative finding and award? For the reasons we will state, we conclude that in the circumstances present here, such an appeal is not timely.

---

[1] General Statutes § 31-301 (a) provides in relevant part: "At any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board . . . ."

The following background provides the necessary context for our resolution of this issue. Although the fund became a part of our workers' compensation statutory scheme during World War II, essentially for the purpose of enticing employers to hire returning disabled war veterans, the legislature has, in the intervening years, altered the fund's statutory parameters.[2] At present, the fund's essential purpose is "to provide compensation for an injured [plaintiff] when the employer fails to pay." *Matey* v. *Estate of Dember*, 256 Conn. 456, 486, 774 A.2d 113 (2001). For the fund to fulfill this purpose, a supplemental order must issue from a commissioner directing the fund to make payment to a plaintiff.[3] Under our workers' compensation statutory framework, the "prerequisites to an order [issuing from a commissioner] to the fund to make payment [to a plaintiff] are that: (1) the substantive and procedural requirements of the [workers' compensation] act have been met; (2) an award against the employer has been entered; and (3) the employer and its insurer have failed to pay." Id., 487–88. Only when these prerequisites—a finding and award properly entered against an employer and an employer's or insurer's failure to pay—have been satisfied, may a commissioner issue a supplemental order directing the fund to compensate a plaintiff in accordance with General Statutes § 31-355.[4]

---

[2] See *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 644–50, 729 A.2d 212 (1999); 1 A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2002) § 8.00, pp. 1285–1408.

[3] Section 31-354-12 of the Regulations of Connecticut State Agencies provides: "Payment [to a claimant under § 31-355 of the General Statutes] of compensation shall be paid from the Fund provided: (a) A formal hearing is held and the Second Injury Fund, the Attorney General's Office, and Workers' Compensation Department, were noticed to attend. (b) A finding and award is granted against the employer after notice to the employer. (c) Ten days have passed from the date of notice of the award to the employer and the claimant has not received payment and the employer has not instituted an appeal. (d) The claimant requests and is granted a *supplemental* order of payment against the Fund." (Emphasis added.)

[4] General Statutes § 31-355 (b) provides in relevant part: "When an award of compensation has been made under the provisions of this chapter against

The fund's appeal concerns the timeliness of its petition for review by the board from a supplemental order issued on October 25, 2006, by the commissioner for the fifth district, Amado J. Vargas, directing the fund to make such payment to the plaintiff, Lovie Dechio, in accordance with § 31-355. Specifically, the fund appeals from the board's granting of the plaintiff's motion to dismiss the fund's petition for review of the commissioner's supplemental order as untimely. In *Stec* v. *Raymark Industries, Inc.*, 114 Conn. App. 81, 968 A.2d 960 (2009),[5] we concluded that § 31-301 (a) does not limit the board's subject matter jurisdiction to hear a late appeal but, rather, provides the board with discretion to hear a late appeal when no timely motion to dismiss has been filed. Essentially, the issue we are presented with, therefore, is whether, under the circumstances, the plaintiff's motion to dismiss the fund's appeal to the board was a timely filed motion objecting properly to a late appeal by the fund. The questions we must address, therefore, concern the timeliness of both the fund's petition for review and the plaintiff's motion to dismiss. For the reasons indicated, we conclude that the fund's petition for review was untimely and that the plaintiff's motion to dismiss was timely. Therefore, the board properly dismissed the fund's appeal.

A review of the prolonged procedural history of the underlying claim is essential to the resolution of the

an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. . . ."

[5] *Stec* involves the fund, as well as Raymark Industries, Inc., and the same underlying issue of the appellant filing an appeal outside of the twenty day time period set out in General Statutes § 31-301 (a). This case differs from *Stec* in that here, the appellee *did* file a timely motion to dismiss the fund's late appeal.

fund's appeal. On December 12, 1981, Peter Dechio, a retired, longtime blue collar worker for Raymark Industries Inc. (Raymark),[6] died from complications resulting from lung cancer. Peter Dechio was the plaintiff's husband of nearly forty years at the time of his death. On June 24, 1988, the commission rendered a finding and award that found, inter alia, that Peter Dechio died as a result of his exposure to asbestos arising out of and during the course of his employment with Raymark and that his wife was entitled to benefits from his date of death until her death or remarriage pursuant to General Statutes § 31-306.[7] The commissioner ordered Raymark to pay those benefits and stated that a hearing would be held to determine Peter Dechio's average weekly wage. In 1988, Raymark entered involuntary bankruptcy, from which it briefly emerged in 1996. As a result, hearings on the compensation rate were not held until August and September, 1997. A decision was not reached, however, because Raymark entered voluntary bankruptcy in March, 1998, again putting a halt to the proceedings.

The plaintiff then sought relief from the automatic stay provisions of federal bankruptcy law[8] so as to allow her to pursue payment from the fund under § 31-355. On June 29, 2000, the plaintiff received an order from the

[6] Raymark was formerly known as Raybestos-Manhattan, Inc.

[7] General Statutes § 31-306 (a) provides in relevant part: "Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease . . . ."

[8] Section 362 (a) of title 11 of the United States Code provides that the filing of a bankruptcy petition with the Bankruptcy Court "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy case]." The Bankruptcy Court has the power, however, to grant relief from the automatic stay. See 11 U.S.C. § 362 (d) through (g).

Bankruptcy Court granting her relief from the automatic stay, which, in turn, allowed her to pursue her workers' compensation claim. In 2002, the fund was cited into the proceedings because of its potential liability under § 31-355. Also cited into the proceedings as defendants were Zurich North America Insurance Company (Zurich), The Hartford Insurance Group (The Hartford), General Reinsurance Group (General Reinsurance) and the Connecticut Insurance Guarantee Association (association).[9] Multiple formal hearings over the subsequent months[10] formed the basis of the September 30, 2005 finding and award issued by Commissioner Vargas. In this finding and award, the commissioner found, among other things, that the "June 24, 1988 finding and award was proper in all respects and [that] the commissioner had the jurisdiction and authority to hear and rule on the claim." He also found that there was no credible evidence that Zurich or The Hartford had insured Raymark's blue collar, manufacturing employees and dismissed the fund's claims against each of them. He also found, in regard to the association, that pursuant to General Statutes § 38a-838 (6), the claim was not a covered claim, nor did the commission have jurisdiction to determine the association's liability. The commissioner also dismissed the fund's claims against General Reinsurance, finding that the commission lacked the authority and jurisdiction to interpret the contract between General Reinsurance and Raymark.

[9] The association is a nonprofit legal entity established by General Statutes § 38a-839 and governed by the Connecticut Insurance Guaranty Association Act, which is codified at General Statutes § 38a-836 et seq. The association was established to reimburse, to a limited extent, covered claims against insolvent insurers. Here, the association, pursuant to its statutory mandate, was the successor of the Ideal Mutual Insurance Company, which insured Raymark's blue collar employees in the early 1980s and was later adjudicated insolvent.

[10] These formal hearings took place on December 3, 2002, and March 26, August 13 and November 19, 2003, and April 26 and June 24, 2004.

The commissioner also found that, at that time, he was precluded from issuing a supplemental order against the fund because, he reasoned, an order must first be issued against Raymark, as the employer of record. Such an order, however, could not be issued, the commissioner found, because of Raymark's bankruptcy status. The commissioner, however, left open the option of issuing a subsequent order against Raymark if it emerged from bankruptcy or if another relief from automatic stay was issued directly against Raymark by the Bankruptcy Court. Following either of those events, the commissioner could issue a supplemental order against the fund. The commissioner also found Peter Dechio's average weekly wage adjusted for cost of living increases to be $337.22 and the resultant statutory compensation rate due the plaintiff to be $224.93.[11]

On December 23, 2005, the Bankruptcy Court granted the plaintiff's motion for relief from the automatic stay and ordered Raymark's automatic stay lifted so as to allow the plaintiff to seek an order directly against Raymark pursuant to the commissioner's September 30, 2005 finding and award.[12] In his September 29, 2006 finding and award, the commissioner directed Raymark

---

[11] See General Statutes § 31-310.

[12] The Bankruptcy Court issued an amended order for relief from the automatic stay on January 5, 2006. Both this amended order and the December 23, 2005 order, were entered as evidence in the September 27, 2006 formal hearing before the commissioner, which directly preceded the September 29, 2006 finding and award. The January 5, 2006 order from the Bankruptcy Court provides in relevant part: "The Connecticut Workers' Compensation Commission is authorized to enter an order/award directly against debtors, Raymark . . . in order to properly trigger the effect of . . . § 31-355 for the purpose of allowing the movants to collect their duly awarded workers' compensation benefits from the [fund]. The movants shall not seek to collect any damages, settlements, judgments and/or benefits from the debtors, Raymark . . . or Raymark Corporation . . . individually or from the bankruptcy estate, and/or the Raytech Asbestos Personal Injury Trust . . . that are or may be awarded in the Workers' Compensation Commission, but may seek, as allowed by law and consistent with this order, to collect said damages, settlements, judgments and/or benefits from the [fund]."

to pay all the benefits due the plaintiff under the September 30, 2005 finding and award. He also ratified and made applicable to the fund the June 24, 1988 and September 30, 2005 findings and awards. The order issued against Raymark went unpaid. On October 25, 2006, the commissioner issued a supplemental order directing the fund to pay the plaintiff pursuant to § 31-355. On November 14, 2006, the fund filed a petition for review with the board. On November 20, 2006, the plaintiff filed a motion to dismiss the fund's petition for review.[13] In its November 28, 2007 opinion, the board granted the plaintiff's motion to dismiss, and this appeal timely followed. Further facts will be put forth as necessary.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . Whe[n] . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 532, 829 A.2d 818 (2003).

Whether § 31-301 precludes the fund from timely appealing from the supplemental order directing it to compensate the plaintiff in the present case "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . .

---

[13] Zurich and The Hartford each filed a motion to dismiss, as well, and subsequently filed supporting memoranda of law. General Reinsurance also filed a motion to dismiss, but it was untimely and without a supporting memorandum of law.

The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 10, 961 A.2d 373 (2009).

Our analysis begins, therefore, with the language of the relevant provisions. General Statutes § 31-301 (a)[14] provides in relevant part that "[a]t any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according

---

[14] We note that General Statutes § 31-301 (a) was amended in 2007 by Public Acts 2007, No. 07-31, "An Act Concerning The Workers' Compensation Medical Practitioners' Fee Schedule and Time For Filing A Workers' Compensation Appeal." This legislation added the following language to § 31-301 (a) effective October 1, 2007: "If a party files a motion subsequent to the finding and award, order or decision, the twenty-day period for filing an appeal of an award or an order by the commissioner shall commence on the date of the decision on such motion."

to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board . . . ." Section 31-301 (e) provides further that "[t]he procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. . . ." Last, we note the mandate of General Statutes § 31-300 that "[i]f no appeal from the decision is taken by either party within twenty days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court. . . ."

In resolving this issue, "we are mindful that the [workers' compensation] act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 314–15, 953 A.2d 13 (2008). With these precepts in mind, we turn to the matter under review.

At issue here is the timeliness of the fund's appeal to the board from the commissioner's supplemental order directing it to compensate the plaintiff. Prior to and leading to that order, there were three separate findings and awards issued by commissioners in this case: the first was issued by the commissioner for the fourth district, Frank J. Verrilli, on June 24, 1988, who found, inter alia, that the plaintiff was entitled to workers' compensation benefits under General Statutes

(Rev. to 1989) § 31-301;[15] the second was issued on September 30, 2005;[16] and the last was issued on September 29, 2006. Although it is reasonable that the fund would not have immediately appealed from the finding and award issued in 1988 in which it was not involved, the fund, though cited into the matter in 2002, failed to appeal timely from either of the subsequent findings and awards even though it admitted before this court during oral argument that it had a "bone to pick" with each finding and award upon issuance. The fund also did not attempt to preserve its right to appeal from either finding and award rendered after it was cited into the proceedings by filing with the commissioner notice of intent to appeal as prescribed under Practice Book § 61-5.[17] The fund now contends that because no order was specifically issued against it until October 25, 2006, it can challenge the order itself and, in so doing, assail each of the preceding findings and awards through its appeal from that order. We disagree.

Our Supreme Court has stated that "[i]t has long been accepted that a system of laws upon which individuals,

[15] The fund was not a party to this proceeding, as the record reveals that Raybestos-Manhattan (Raymark's predecessor) was solvent at that time.

[16] This finding and award determined, inter alia, the compensation rate to be paid to the plaintiff, as well as disposed of various claims the fund made against The Hartford, Zurich, General Reinsurance and the association.

[17] Practice Book § 61-5 (a) provides in relevant part: "An appeal of a judgment . . . may be deferred until the judgment that disposes of the case for all purposes and as to all parties is rendered. . . . [A] notice of intent to appeal must be filed in order to defer the taking of an appeal until the final judgment that disposes of the case for all purposes and as to all parties is rendered . . .

"(2) when the deferred appeal is to be taken from a judgment that disposes of only part of a complaint, counterclaim, or cross complaint but nevertheless disposes of all causes of action in that pleading brought by or against a particular party or parties." Moreover, this section of the rules of appellate procedure is made applicable to appeals to the board from decisions of a commissioner by General Statutes § 31-301 (e), which provides in relevant part: "The procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. . . ."

governments and organizations rely to resolve disputes is dependent upon according finality to judicial decisions. . . . [A] party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Citation omitted; internal quotation marks omitted.) *Marone* v. *Waterbury*, 244 Conn. 1, 11, 707 A.2d 725 (1998). The court concluded that "[p]rinciples of finality are equally applicable to administrative decisions, such as workers' compensation awards, that are appealable . . . . Both employers and their injured employees must be able to depend on the finality of administrative decisions and the appeals taken therefrom in order to regulate their future behavior." Id., 12–13. Furthermore, "[w]hether a judgment is final depends upon the governing statute[s]." Id., 12. Also, "while workers' compensation awards may bear some resemblance to interlocutory decrees, [however] that similarity does not mean that such an award is, in fact, interlocutory. For example, a workers' compensation award conclusively establishes the employer's liability and precludes relitigation of that issue in a subsequent action brought in a court of general jurisdiction." Id., 13–14.

In this appeal, we are presented with a procedural posture that is the converse, in a sense, of the usual scenario in which the finality of a commissioner's decision is examined for a determination of whether that decision is a final judgment for the purposes of an appeal. Generally, these questions of finality arise in a context involving issues revolving around a subsequent necessary *remand* of an award from the board to the commissioner. See *Hunt* v. *Naugatuck*, 273 Conn. 97, 104, 868 A.2d 54 (2005) (when remand of matter to commissioner for further proceedings necessary, finality of board's decision called into question). In this

appeal, we are faced with the same questions of finality involving not a remand but a then *prospective* decision of the commissioner that has since occurred—the issuance of the supplemental order directing the fund to compensate the plaintiff. *Levarge* v. *General Dynamics Corp.*, 282 Conn. 386, 390, 920 A.2d 996 (2007), a workers' compensation case, though interpreting General Statutes §§ 31-301a and 31-301b, concisely sets out the usual context when such issues arise and the method utilized in resolving those issues and is instructive for our purposes.

In *Levarge*, the issue was "whether the decision of the . . . board . . . which affirmed the decision of the . . . commissioner that the defendants were collaterally estopped from relitigating the issue of causation, constitutes a final judgment or an otherwise appealable interlocutory order, thereby implicating [the court's] subject matter jurisdiction." *Levarge* v. *Dynamics Corp.*, supra, 282 Conn. 387. After relating the facts and circumstances present, the court set forth the governing legal principles. Id., 390. The court stated that "the Appellate Court's review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the [board]. . . . When the remand of a matter to the commissioner for further proceedings is necessary, the finality of the board's decision is called into question . . . . In such circumstances, [t]he test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings *will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed.* . . . This rule is an application of the more general final judgment principle that an otherwise interlocutory order is appealable [when] (1) it terminates a

separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; emphasis added; internal quotation marks omitted.) Id. We conclude that these principles are applicable to this appeal, in part, because the mandates of the more general final judgment principles require it.[18]

*Levarge* is also helpful to our analysis for its application of these principles to the facts and circumstances the court faced there. First, the court established that on remand, under the applicable statute, the commissioner had to apportion liability for the plaintiff's injuries between two insurers and the employer. Then, as a result, the court concluded that it was compelled to "determine whether apportionment constitutes a ministerial act or will require the exercise of independent judgment and the taking of additional evidence." Id., 391. After interpreting the applicable statutes, the court concluded that, generally, "if the commissioner awards benefits, and there is a question as to the extent of liability of prior employers or successive insurers for the compensable injury, the commissioner must apportion liability among these employers or insurers within a reasonable period of time after the initial award." Id. The court found that the record revealed that no such apportionment had taken place and that on remand the apportionment must be done. Id. The court then concluded that "[t]his determination will require a proceeding before the commissioner involving the production of evidence by all parties and a review of various medical and employment records. This court long has

---

[18] We also note that "[t]he procedure in appealing from an award of the commissioner [to the board] shall be the same procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. . . ." General Statutes § 31-301 (e). The conclusion is further bolstered by the language of General Statutes § 31-300, which provides in relevant part: "If no appeal from the decision [of the commissioner] is taken by either party within twenty days thereafter, such award shall be final [and enforceable]."

held that such a determination on remand will require the commissioner's exercise of independent judgment and certainly will not be ministerial in nature." Id., 392.

We now must determine, under the circumstances, whether the October 25, 2006 supplemental order directing the fund to compensate the plaintiff resulted from further proceedings that were merely ministerial in nature, thus making the September 29, 2006 finding and award an appealable final judgment. See id., 390. Here, there was not the exercise of independent judgment or discretion *and* the taking of additional evidence on the part of the commissioner in regard to the issuing of the supplemental order against the fund. The commissioner, prior to issuing its supplemental order against the fund had to determine only one matter: whether Raymark compensated the plaintiff in the intervening days since the September 29, 2006 finding and award. This is so because in the September 30, 2005 finding and award, the commissioner had dismissed the claims against The Hartford, General Reinsurance and Zurich and found that the commission had no jurisdiction to determine the association's liability. Unlike in the usual circumstance when this court is called on to determine if a decision of the board is an appealable final order, here the "further proceeding" has already occurred. That is, we are not called on to ascertain what the commissioner *will* do on remand but to determine what the commissioner *did* do and was required to do when he issued his supplemental order. There is nothing in the record to indicate that the commissioner in the proceeding that led to the issuance of the supplemental order exercised independent judgment or discretion and took evidence. More importantly, there is nothing to indicate that the commissioner was *required* to exercise independent judgment or discretion and to take evidence.

The record reveals that Raymark had been in bankruptcy status for many years prior to the issuance of the order. It was precluded from compensating the plaintiff as a result, and the plaintiff was barred from seeking any recovery from Raymark whatsoever, regardless of the huge profits it was making. We find compelling to the determination that the proceeding was merely ministerial the language of the bankruptcy order granting the plaintiff a relief from stay that was part of the record before the commissioner in the proceeding leading to the issuance of the supplemental order. The amended order, issued on January 5, 2006, provided in relevant part: "The Connecticut Workers' Compensation Commission is authorized to enter an order/award directly against debtors, Raymark . . . in order to properly trigger the effect of . . . § 31-355 for the purpose of allowing the movants to collect their duly awarded workers' compensation benefits from the [fund]. The movants shall not seek to collect any damages, settlements, judgments and/or benefits from the debtors, Raymark . . . or Raymark Corporation . . . individually or from the bankruptcy estate, and/or the Raytech Asbestos Personal Injury Trust . . . that are or may be awarded in the Workers' Compensation Commission, but may seek, as allowed by law and consistent with this order, to collect said damages, settlements, judgments and/or benefits from the [fund]." See footnote 12. Simply stated, the record on which the commissioner relied reveals that at the time of the issuance of the order directing the fund to compensate the plaintiff, the plaintiff was precluded from seeking recovery from Raymark, and Raymark was precluded from compensating the plaintiff.

In light of Raymark's prolonged bankruptcy, the express provisions of the Bankruptcy Court's order granting the relief from automatic stay, the dismissal, more than one year prior, of all the defendant insurance

companies and the remedial nature of the workers' compensation scheme, we conclude that the commissioner's issuance of the supplemental order against the fund was a ministerial act. The facts and circumstances of this matter removed from the commissioner any requirement of the exercise of independent judgment or discretion. The commissioner's role in issuing the order was merely the fulfillment of a function akin to the application of a simple mathematical formula. See *Smith* v. *Yurkovsky*, 265 Conn. 816, 820, 830 A.2d 743 (2003) (holding that remand requiring commissioner to perform basic mathematical calculation is ministerial and does not require exercise of independent judgment or discretion); *Szudora* v. *Fairfield*, 214 Conn. 552, 557, 573 A.2d 1 (1990) (holding that because compliance with compensation review division's remand order required only "a ministerial, noncontroversial compilation of salary information retrievable from an existing computer data bank" already in evidence, decision of compensation review division was appealable final judgment).

As a result of concluding that the September 29, 2006 finding and award was final for the purposes of an appeal by the fund, it is clear that the petition for review was not filed within the statutory mandate of § 31-301. In cases in which a party is represented by counsel, such as this case, the twenty day appeal period prescribed by § 31-301 (a) begins to run on the date that notice of a commissioner's decision is sent to the party's counsel. See *Schreck* v. *Stamford*, 250 Conn. 592, 600–601, 737 A.2d 916 (1999). The fund does not contend, nor does the record reflect, that notice of the September 29, 2006 finding and award was sent to it at a point in time that would bring its petition for review within the scope of § 31-301, and we will not here assume such a circumstance.

The record also reveals, and the parties do not dispute, the timeliness of the plaintiff's motion to dismiss, which was filed three days after the fund's petition for review was filed with the board.[19] Thus, because we conclude that the fund's petition for review was untimely and that the plaintiff's motion to dismiss was timely, we conclude that the board dismissed properly the fund's appeal.

The decision of the workers' compensation review board is affirmed.

In this opinion GRUENDEL, J., concurred.

LAVINE, J., dissenting. I respectfully dissent from the majority opinion, which concludes that the workers' compensation review board properly dismissed the appeal of the second injury fund (fund). Until the workers' compensation commissioner (commissioner) ordered the fund to pay the plaintiff, Lovie Dechio, the fund was not aggrieved, and there was no final judgment from which it could appeal. In other words, because the fund was under no obligation to pay the plaintiff until ordered to do so, there was no reason, or necessity, for the fund to file an appeal until the supplemental order was issued. The fact that the fund had reason to expect that such an order would be issued does not change my conclusion.

The following details of the procedural history are relevant to the fund's appeal. On September 30, 2005, the commissioner issued a finding and award in which he found, among other things, that the defendant Raymark Industries, Inc. (Raymark), had not paid the plaintiff, as it had filed numerous petitions in bankruptcy.

---

[19] Practice Book § 66-8 provides in relevant part: "Any claim that an appeal or writ of error should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal or writ. Any such motion must be filed . . . within ten days after the filing of the appeal . . . ."

The commissioner also found that Raymark "continues to be in a bankruptcy mode and continues to be in business, making huge profits." The plaintiff was granted relief from the bankruptcy stay to pursue a claim against the fund. Later, the fund was impleaded over its objection.[1] The commissioner paraphrased General Statutes § 31-355, stating that "prior to an entry of an award against the [fund], an order first must be issued against the uninsured employer." The commissioner found that § 31-355 "does not apply in this matter. The undersigned [commissioner] is precluded from issuing an award against the [fund] because an order must first issue against the [employer] of record. An order cannot issue against the [employer] because of its bankruptcy status. . . . Once [Raymark] is out of bankruptcy or if a relief from stay is issued directly against it, the undersigned will then entertain any motions or requests for orders against it prior to any order under . . . [§] 31-355." The commissioner found the compensation rate to be $224.93 and stated that "[t]he matter shall remain open subject to future hearings at the request of the parties . . . ."

On September 29, 2006, the commissioner issued another finding and award in which he ordered Raymark to pay all benefits noted in the October 3, 2005 finding and award. The commissioner also stated: "In the event that [Raymark] fails to pay this claim within [twenty] days, counsel for the [plaintiff] is to contact [the commissioner's] office so that a supplemental finding and award can be issued against the [fund] pursuant to . . . [§] 31-355."

I agree with the majority that the resolution of the fund's appeal turns on the construction of § 31-355. Our

[1] The commissioner found that the fund objected to being made a party to the plaintiff's claim, "contending, among other things, that there was insurance coverage in place and that . . . General Statutes [§] 31-355 does not apply. It further contends that the June 24, 1988 finding and award was not proper."

workers' compensation scheme is in derogation of the common law; see *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937) ("the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope"); and the workers' compensation commission must act strictly within its authority. *Nationwide Mutual Ins. Co.* v. *Allen,* 83 Conn. App. 526, 532, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004). General Statutes § 31-355 (b) provides in relevant part that "[w]hen an award of compensation has been made under the provisions of this chapter against an employer who fail[s] . . . or is unable to pay . . . and whose insurer fail[s] . . . or is unable to pay . . . such compensation shall be paid from the Second Injury Fund. The commissioner, on a *finding of failure or inability to pay* compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. . . ." (Emphasis added.)

The question is whether the fund was aggrieved by the commissioner's finding and award dated September 29, 2006, when the commissioner ordered Raymark to pay the plaintiff the benefits the commissioner found that she was due. "To be entitled to invoke the judicial process, a party must have suffered an aggrievement." *Kelly* v. *Dearington,* 23 Conn. App. 657, 660, 583 A.2d 937 (1990). The fund was not aggrieved by the September 29, 2006 finding and award. Requiring the fund to pay the plaintiff was contingent on Raymark's failing to pay and the commissioner's issuing a supplemental order. In fact, the commissioner ordered the plaintiff to return for a supplemental order if she was not paid. Raymark's failure to pay was a condition precedent to the fund's being ordered to pay. The commissioner's ruling on the request for a supplemental order could not be ministerial because the commissioner was required to make a finding as to whether Raymark had

paid the plaintiff before he could issue a supplemental order.

*Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 923 A.2d 657 (2007), provides guidance to the resolution of the issue in this case. *Hummel* concerns the application of the final judgment rule to appeals from the board under General Statutes § 31-301b. *Hummel* v. *Marten Transport, Ltd.*, supra, 479. General Statutes § 31-301b provides that "[a]ny party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court." Our Supreme Court stated that "the Appellate Court's review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the [board]. . . . When the board remands a case to the commissioner for further proceedings in connection with the challenged award, the finality of the board's decision is called into question . . . . In such circumstances, [t]he test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and *the taking of additional evidence*, the appeal is premature and must be dismissed. . . . Finally, because the existence of a final judgment is a jurisdictional prerequisite to an appeal, the reviewing court may dismiss the case on that ground even if the issue was not raised by the parties." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hummel* v. *Marten Transport, Ltd.*, supra, 485.

Our Supreme Court "first imported a final judgment requirement into § 31-301b in *Matey* v. *Estate of Dember*, 210 Conn. 626, 556 A.2d 599 (1989). In *Matey*,

the [fund] appealed from a decision of the compensation review [board], which affirmed the finding of the commissioner as to the fund's liability to the claimant but remanded the case for further proceedings before the commissioner with respect to the amount of the award. . . . Although the claimant had not challenged the appealability of the board's decision, [our Supreme Court] followed the holding of [*Respasi* v. *Jenkins Bros.*, 16 Conn. App. 121, 546 A.2d 965, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988)], in concluding, first that only a final judgment is appealable under § 31-301b, and, second, that the fund's appeal was premature in light of the board's remand order directing the commissioner to conduct a further evidentiary hearing for the purpose of determining the correct amount of the award." (Citation omitted.) *Hummel* v. *Marten Transport, Ltd.*, supra, 282 Conn. 491–92.

The case here is procedurally distinct from *Hummel* as it does not concern a remand from the board to the commissioner. Nonetheless, the majority resolves the propriety of the board's dismissing the fund's appeal by concluding that the commissioner's supplemental order was merely ministerial. I respectfully disagree. When deciding whether to issue a supplemental order as to the fund, the commissioner necessarily had to consider evidence as to whether Raymark, or its insurers, had paid the plaintiff benefits. The supplemental order was contingent on the completion of the following requirements pursuant to § 31-355: "(1) the substantive and procedural requirements of the act have been met; (2) the award against the employer has been entered; and (3) *the employer and its insurer have failed to pay.*" (Emphasis added.) *Matey* v. *Estate of Dember*, 256 Conn. 456, 487–88, 774 A.2d 113 (2001) (*Matey II*). Implicitly and necessarily, the commissioner had to find that Raymark and its insurers had not paid the plaintiff

within twenty days, as ordered, before the commissioner could issue the supplemental order. That finding required the taking of additional evidence, however slight. I simply do not agree that the commissioner's issuance of the supplemental order is "akin to the application of a simple mathematical formula," as the majority concludes.

Although the board here relied on *Matey II* to support its decision to dismiss the fund's appeal, that case actually supports the fund's position with respect to the timeliness issue. In *Matey II*, "the plaintiff repeatedly argued that the fund was barred from raising the jurisdictional claim on appeal to the board because it had not done so within [the appeal period] after the October 2, 1990 finding and award. *That award, however, was not directed against the fund, but against Dember's estate.* An order against the fund was not entered until February 25, 1991, when the fund filed a timely motion to open." (Emphasis added.) *Matey* v. *Estate of Dember*, supra, 256 Conn. 474; see also *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 314 n.4, 702 A.2d 1180 (1997) ("[t]he decision from which the fund appeals is separate and independent from the appeal to the board by the employer and the insurer"). The portion of *Matey II* on which the board relied, *Matey* v. *Estate of Dember*, supra, 488–94; concerns the merits of the fund's appeal in that case. It does not apply to the question of whether the appeal was timely.

I concur with the majority's assertion that the Workers' Compensation Act, General Statutes § 31-275 et seq., "is a remedial statute that should be construed generously to accomplish its purpose." *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 314, 953 A.2d 13 (2008). The remedial nature of the statute, however, does not provide a basis for deciding this case. The commissioner's finding and award of September 29, 2006, gave Raymark, or its insurers, twenty days in which to pay

the plaintiff benefits. If the benefits were not paid, the plaintiff could return to the commissioner to request a supplemental award. Twenty days is the same period of time in which the fund could appeal. See General Statutes § 31-301. The fund could not be expected to know whether Raymark would pay within the twenty days. After all, the commissioner found that Raymark was still in business and making "huge" profits.

For the foregoing reasons, I respectfully dissent.