RICHARD STEC ET AL. *v.* RAYMARK
INDUSTRIES, INC., ET AL.
(SC 18412)

Rogers, C. J., and Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 21—officially released December 28, 2010

*Lucas D. Strunk*, for the appellant (defendant The Hartford Insurance Group).

*Lawrence G. Widem*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (defendant second injury fund).

*Christopher Meisenkothen*, for the appellee (plaintiff June Stec).

*Opinion*

EVELEIGH, J. The sole issue in this certified appeal[1] is whether the failure to file an appeal from the decision of a workers' compensation commissioner (commissioner) within the twenty day limit set forth in General Statutes § 31-301 (a)[2] deprives the compensation review

---

[1] We granted the defendant The Hartford Insurance Group's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine that the failure to file an appeal from a decision of the workers' compensation commissioner within the time constraints set forth in General Statutes § 31-301 (a) does not deprive the workers' compensation review board of jurisdiction?" *Stec* v. *Raymark Industries, Inc.*, 293 Conn. 905, 976 A.2d 706 (2009).

[2] General Statutes § 31-301 (a) provides: "At any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days there-

board (board) of subject matter jurisdiction over that appeal.[3] Specifically, we must determine whether the Appellate Court properly concluded that the board improperly had dismissed for lack of subject matter jurisdiction the appeal of the second injury fund (fund)[4]

after shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties. If a party files a motion subsequent to the finding and award, order or decision, the twenty-day period for filing an appeal of an award or an order by the commissioner shall commence on the date of the decision on such motion."

Although § 31-301 (a) was amended in 2007; see Public Acts 2007, No. 07-31; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 31-301 (a).

[3] In the companion case also released today, *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 10 A.3d 20 (2010), we affirmed the judgment of the Appellate Court upholding the board's dismissal of the second injury fund's (fund) appeal as untimely. We concluded in that case that when the fund has participated in litigation before a commissioner, the appeal period set forth in § 31-301 (a) to challenge an adverse ruling of a commissioner controls, rather than the time period established by General Statutes § 31-355 (b) after the commissioner issues an order directing the fund to pay benefits, and that the twenty day limit set forth in § 31-301 (a) commences with the issuance of a finding and order that establishes an employer's lack of insurance coverage and makes clear the fund's probable liability for payments to a claimant. Id., 403.

[4] The fund was made a party to the proceedings pursuant to General Statutes § 31-355, which provides in relevant part: "(a) The commissioner shall give notice to the Treasurer of all hearing of matters that may involve payment from the Second Injury Fund, and may make an award directing the Treasurer to make payment from the fund.

"(b) When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. Whenever liability to pay compensation is contested by the Treasurer, the Treasurer shall file with the commissioner, on or before the twenty-eighth day after the Treasurer has received an order of payment from the commissioner, a notice in accordance with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the

from a decision of the commissioner concluding that the plaintiff June Stec (plaintiff),[5] the surviving spouse of the named plaintiff, Richard Stec (decedent), was entitled to dependent widow benefits from the decedent's employer, the named defendant, Raymark Industries, Inc. (Raymark).[6] The defendant The Hartford Insurance Group (The Hartford),[7] an insurance carrier that the fund claimed was potentially responsible for any benefits owed, claims that filing an appeal outside the twenty day limit set forth in § 31-301 (a) deprives the board of subject matter jurisdiction over such an appeal. Conversely, the fund claims that § 31-301 (a)

---

name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. A copy of the notice shall be sent to the employee. The commissioner shall hold a hearing on such contested liability at the request of the Treasurer or the employee in accordance with the provisions of this chapter. If the Treasurer fails to file the notice contesting liability within the time prescribed in this section, the Treasurer shall be conclusively presumed to have accepted the compensability of such alleged injury or death from the Second Injury Fund and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or contest the extent of the employee's disability. . . ." Simply stated, the mandate of the fund "is to provide compensation for an injured employee when the employer fails to pay." *Matey* v. *Estate of Dember*, 256 Conn. 456, 485–86, 774 A.2d 113 (2001).

[5] Although the plaintiff filed an appellee's brief, she requests that this court reverse the judgment of the Appellate Court. Because the plaintiff's assertions echo those made by The Hartford, we will consider her claims simultaneously with those of The Hartford. We also note that at oral argument before this court, plaintiff's counsel informed the court that the plaintiff had recently died. The appeal is not rendered moot, however, because the fund paid dependent widow benefits to the plaintiff. As a result, the fund, if successful on appeal, would claim to the board that The Hartford, which the fund alleged is an insurer of Raymark, should have paid those benefits and, therefore, the fund is entitled to reimbursement.

[6] Raymark was known as Raybestos-Manhatten, Inc., during the decedent's period of employment.

[7] In addition to Raymark and the fund, several insurance carriers potentially liable for payment of the workers' compensation benefits were also defendants in the workers' compensation proceeding, specifically General Reinsurance Corporation, National Union Fire Insurance Company, Connecticut Insurance Guaranty Association, Zurich North America, and The Hartford. The Hartford is the only insurer involved in this appeal.

and precedent dictate that an appeal filed outside the twenty day limit is voidable, but not void. We conclude that the time limitation set forth in § 31-301 (a) for filing an appeal is jurisdictional and that filing an appeal outside of that time period deprives the board of subject matter jurisdiction over that appeal. Accordingly, we reverse the judgment of the Appellate Court.[8]

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "In 1986, the [plaintiff, and the decedent, who was then living], filed a workers' compensation claim alleging that the decedent contracted lung cancer as a result of exposure to asbestos during the course of his employment with [Raymark]. Raymark [had] been in bankruptcy proceedings since 1986, and the [fund] was cited in as a party to the workers' compensation claim because of its potential liability pursuant to General Statutes § 31-355.

"Hearings were held before the . . . commissioner between 2002 and 2005, and on October 3, 2005, the commissioner issued a finding and award. In that finding and award, the commissioner found, inter alia, that [the decedent] 'sustained a compensable work-related lung injury as a result of being exposed to asbestos while working for [Raymark],' and that such injury led to his disability and ultimate death. The commissioner also found that he was 'precluded from issuing an award against the [fund] . . . because an order must first issue against [Raymark] as the employer of record. An order cannot issue against [Raymark] because of its bankruptcy status.' The finding and award went on to indicate that if relief from the automatic bankruptcy stay were to be issued by the Bankruptcy Court, the

_____

[8] Because we reverse the judgment of the Appellate Court, we need not reach The Hartford's additional claim, raised under Practice Book § 61-5, that the fund failed to file a notice of intent to appeal the commissioner's October 3, 2005 decision.

commissioner would entertain requests for orders against both Raymark and the fund.[9]

"Subsequent to that October 3, 2005 finding and award, the Bankruptcy Court issued relief from the automatic stay in the Raymark bankruptcy case. Thereafter, on September 29, 2006, the commissioner issued a new finding and award ordering Raymark to pay 'all the chapter 568 [workers' compensation] benefits noted in the October 3, 2005 finding and award.' On October 25, 2006, the commissioner issued an order to the fund for payment of the benefits under the October 3, 2005 finding and award.

"The fund appealed to the board on November 13, 2006. [The Hartford filed a brief in opposition on April 26, 2007], claiming that the fund was required to appeal to the board within twenty days of the October 3, 2005 finding and award.[10] In response, the fund argued that

---

[9] "Section 362 (a) of title 11 of the United States Code provides that the filing of a bankruptcy petition with the Bankruptcy Court 'operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy case].' The Bankruptcy Court, however, has the power to grant relief from the automatic stay. See 11 U.S.C. § 362 (d) through (g)." *Stec* v. *Raymark Industries, Inc.*, 114 Conn. App. 81, 85 n.3, 968 A.2d 960 (2009).

[10] The opinion of the Appellate Court referred to National Union Fire Insurance Company (National Union) and its December 5, 2006 motion to dismiss, which were the relevant party and pleading before that court. *Stec* v. *Raymark Industries, Inc.*, 114 Conn. App. 81, 85, 968 A.2d 960 (2009). Prior to The Hartford filing its brief in opposition to the fund's appeal, National Union had filed a motion, dated December 5, 2006, seeking to dismiss the fund's appeal to the board as untimely. As previously noted; see footnote 7 of this opinion; National Union and The Hartford were two of several insurance carriers in the proceedings before the commissioner that were adverse to the fund. When the fund sought review of the board's dismissal of its appeal, only National Union filed an appellee brief with the Appellate Court, although The Hartford also was a party before that court. *Stec* v. *Raymark Industries, Inc.*, supra, 82. On appeal to this court, The Hartford is the only remaining insurance carrier and, for the sake of clarity, we refer to The Hartford and its April 26, 2007 brief as the relevant party

the appeal was timely, as it was filed within twenty days of the issuance of the October 25, 2006 order. It also argued that the motion to dismiss the appeal was filed outside of the ten day period in which such motions must be filed pursuant to Practice Book § 66-8, thereby waiving the issue of timeliness. The board dismissed the appeal for lack of subject matter jurisdiction, holding that the appeal was filed late and that a motion to dismiss for lack of subject matter jurisdiction may be filed at any time." *Stec* v. *Raymark Industries, Inc.*, 114 Conn. App. 81, 84–86, 968 A.2d 960 (2009).

The fund appealed from the board's dismissal to the Appellate Court, "the dispositive issue on appeal [being] whether the failure to file an appeal to the [board] within the twenty day period set forth in § 31-301 (a) deprives the board of its subject matter jurisdiction or whether timely filing may be waived by the parties." Id., 86. In determining that such a failure did not deprive the board of subject matter jurisdiction, the Appellate Court "conclude[d] that § 31-301 (a) does not limit the board's subject matter jurisdiction to hear a late appeal but, rather, provides the board with discretion to hear a late appeal when no timely motion to dismiss has been filed."[11] Id., 99. The Appellate Court accordingly reversed the decision of the board dismissing the fund's

---

and pleading, rather than National Union and its motion to dismiss. Additionally, we note that, in light of our determination that the twenty day appeal limitation set forth in § 31-301 (a) is subject matter jurisdictional, the substitution of National Union, and its motion to dismiss, for The Hartford, and its brief, would not alter our conclusion.

[11] As the Appellate Court noted, "[t]he present case involves the same defendants and the same underlying issue [as *Dechio* v. *Raymark Industries, Inc.*, 114 Conn. App. 58, 968 A.2d 450 (2009)]—the [fund in both instances] filed its appeal outside of the twenty day period set forth in § 31-301 (a). [*Stec*] differs from *Dechio*, however, in that [The Hartford] in the present case did not file a timely motion to dismiss the [fund's] appeal. But for this difference, the two cases would command the same result." *Stec* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 83. The result of our decision today is that the cases command the same result.

appeal and remanded the case for further proceedings. Id. This certified appeal followed.

The Hartford claims on appeal that the board has a time-tested interpretation of § 31-301 (a), that the board lacks subject matter jurisdiction over untimely appeals and that this interpretation is entitled to deference. In support of its claim, The Hartford asserts that: (1) the plain language of the twenty day appeal period set forth in § 31-301 (a), in concert with General Statutes § 31-300[12] and a regulation promulgated pursuant to § 31-301 (e),[13] demonstrates that the board must dismiss an

[12] General Statutes § 31-300 provides in relevant part: "As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of the commissioner's findings and award. The commissioner shall, as part of the written award, inform the employee or the employee's dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. The commissioner shall retain the original findings and award in said commissioner's office. *If no appeal from the decision is taken by either party within twenty days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court.* The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the Superior Court; and, upon the filing of an application to the court for an execution, the commissioner in whose office the award is on file shall, upon the request of the clerk of said court, send to the clerk a certified copy of such findings and award. . . ." (Emphasis added.)

[13] General Statutes § 31-301 (e) provides in relevant part: "The procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. The chairman of the Workers' Compensation Commission shall adopt regulations, in accordance with the provisions of chapter 54, to establish rules, methods of procedure and forms as the chairman deems expedient for the purposes of this chapter."

Pursuant to this mandate, the chairman promulgated § 31-301-1 of the Regulations of Connecticut State Agencies, which provides in relevant part: "An appeal from an award, a finding and award, or a decision of the commissioner upon a motion shall be made to the [board] by filing in the office of the commissioner [from] which such award or such decision on a motion originated an appeal petition and five copies thereof. *Such appeal shall be filed within twenty days after the entry of such award or decision* and shall be in substantial conformity with the forms approved by said board. . . ." (Emphasis added.)

untimely appeal for lack of jurisdiction; (2) the time limitation for filing an appeal should be narrowly and strictly construed because workers' compensation statutes are in derogation of the common law; (3) the Appellate Court recognized, but failed to apply, the public policies of expediency and finality that underlie the workers' compensation statutes; (4) the judgment of the Appellate Court conflicts with established precedent of that court and the board; and (5) *Murphy* v. *Elms Hotel*, 104 Conn. 351, 133 A. 106 (1926), wherein this court determined that an untimely workers' compensation appeal was voidable, but not void, is not binding precedent.

The fund responds by claiming that: (1) the language of § 31-301 fails to provide sufficiently clear and unambiguous evidence that the legislature intended for an appeal outside the twenty day limit to deprive the board of subject matter jurisdiction; (2) this court should abide by the legislature's policy of a voidable, nonsubject matter jurisdictional appeal period; (3) the Appellate Court did not disregard established precedent when it reversed the board's dismissal of the fund's appeal; and (4) *Murphy* v. *Elms Hotel*, supra, 104 Conn. 351, is applicable and binding precedent. We agree with The Hartford.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . [W]e do not afford

deference to an agency's interpretation of a statute when . . . the construction of a statute previously has not been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation . . . ." (Citation omitted; internal quotation marks omitted.) *Jones* v. *Redding*, 296 Conn. 352, 362–63, 995 A.2d 51 (2010). In addition to being time-tested, an agency's interpretation must also be reasonable. *Derrane* v. *Hartford*, 295 Conn. 35, 42, 988 A.2d 297 (2010).

This court has never addressed whether the twenty day appeal limitation set forth in § 31-301 (a) deprives the board of subject matter jurisdiction over an untimely appeal. The Hartford claims that the board's interpretation of § 31-301 (a) is time-tested and, therefore, entitled to deference. Specifically, The Hartford cites twenty years of board decisions concluding that the failure to file an appeal within the time limit set forth in § 31-301 (a) deprives the board of subject matter jurisdiction over such untimely appeals.[14] The fund disagrees, relying on *Murphy* v. *Elms Hotel*, supra, 104 Conn. 351, as applicable and binding precedent rendering the board's interpretation immaterial.

Our research reveals that the board repeatedly has interpreted the appeal period set forth in § 31-301 (a) as limiting its jurisdiction over untimely appeals, and that the board has espoused this interpretation since its earliest published decisions. See *Golob* v. *State*, 1 Conn. Workers' Comp. Rev. Op. 3, (1980); *Ilewicz* v. *State*, 1 Conn. Workers' Comp. Rev. Op. 5, (1980); *Merto*

---

[14] See, e.g., *Hicking* v. *State*, No. 4825, CRB-2-04-6 (July 14, 2005) (board lacks subject matter jurisdiction over untimely appeal); *Orciari* v. *Labor Ready, Inc.*, No. 4702, CRB-5-03-8 (May 25, 2005) (same); *Downer* v. *Mark IV Construction, Inc.*, No. 4462, CRB-3-01-11 (November 15, 2002) (same); *Samela* v. *New Haven*, No. 03677, CRB-03-97-09 (October 20, 1998), aff'd, 54 Conn. App. 902, 733 A.2d 924 (1999) (same); *Conaci* v. *Hartford Hospital*, No. 1263, CRB-1-91-7 (September 14, 1993) (same), rev'd on other grounds, 36 Conn. App. 298, 650 A.2d 613 (1994); *Johnston* v. *ARA Services, Inc.*, 7 Conn. Workers' Comp. Rev. Op. 19, 20 (1989) (same).

v. *Mason-Dixon Transportation Co.*, 1 Conn. Workers' Comp. Rev. Op. 7 (1980); see also *Karas* v. *Hamilton*, 1 Conn. Workers' Comp. Rev. Op. 26, (1981) (dismissing untimely appeal pursuant to *Golob*). Additionally, prior to the judgment rendered by the Appellate Court in the present case, that court previously had affirmed the board's interpretation of § 31-301 (a). See *Vega* v. *Waltsco, Inc.*, 46 Conn. App. 298, 300, 699 A.2d 247 (1997); *Cyr* v. *Domino's Pizza*, 45 Conn. App. 199, 203, 695 A.2d 29 (1997); *Freeman* v. *Hull Dye & Print, Inc.*, 39 Conn. App. 717, 720, 667 A.2d 76 (1995). In light of the board's numerous decisions from 1980 to 2010, a period of thirty years, we conclude that the board's construction of § 31-301 (a) constitutes a time-tested interpretation. Compare *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 447–48, 984 A.2d 748 (2008) (numerous decisions over thirty-one year period was time-tested), *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 405–407, 944 A.2d 925 (2008) (numerous decisions over twelve year period was time-tested), and *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 268, 788 A.2d 60 (2002) (numerous decisions over twenty-five year period was time-tested), with *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 600, 996 A.2d 729 (2010) (agency interpretation was not time-tested and entitled to deference when agency only had applied interpretation twice and interpretation had not been subject to judicial review).

Our "conclusion that [the board's] interpretation of a statute is entitled to deference [because it is time-tested], however, does not end [our] inquiry. We also must determine whether the [board's] interpretation is reasonable. . . . In so doing, we apply our established rules of statutory construction." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 296 Conn. 599.

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 399, 999 A.2d 682 (2010).

We accordingly first turn to the relevant text of § 31-301 (a). See General Statutes § 1-2z. Section 31-301 (a) provides in relevant part that "[a]t any time *within twenty days* after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the [board] by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. . . ." (Emphasis added.)

We initially note that, by its language, § 31-301 (a) clearly requires that a party must appeal within twenty days. The statute also provides no exceptions to the

twenty day filing period. The statute, however, does not explicitly address whether the twenty day limitation operates as a jurisdictional bar to an untimely appeal. In accordance with § 1-2z, we next examine § 31-301 (a) and its relationship to other workers' compensation statutes.[15] Our analysis of related provisions of the Workers' Compensation Act (act) provides limited additional guidance regarding the reasonableness of the board's interpretation of the twenty day appeal limitation set forth in § 31-301 (a). We accordingly conclude that § 31-301 (a) is ambiguous as to whether the twenty day appeal limitation deprives the board of subject matter jurisdiction over an untimely appeal.

Having concluded that § 31-301 (a) is ambiguous, we therefore turn to extratextual sources to determine the reasonableness of the board's interpretation that the twenty day appeal limitation is jurisdictional. See Gen-

---

[15] For instance, § 31-300 provides that if no appeal is taken from a commissioner's decision within twenty days, that decision becomes final and subject to enforcement. The fact that a commissioner's decision is final after the passage of twenty days is some evidence that the twenty day appeal limitation is jurisdictional. Section 31-301 (e), however, provides that, where applicable, the procedure for appealing from a commissioner's decision to the board shall be the same as the procedure for taking an appeal from the Superior Court to the Supreme Court. The fact that an untimely appeal from the Superior Court to the Supreme Court is not foreclosed supports the fund's claim that the twenty day limitation is not jurisdictional. See *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 104, 900 A.2d 1242 (2006) ("the twenty day limitation in the rules of practice is not an absolute bar to the filing of a late appeal"). Section 31-301 (e) additionally directs that the chairman of the workers' compensation commission adopt regulations governing the methods of procedure. The regulation adopted pursuant to § 31-301 (e) mandates that an "appeal shall be filed within twenty days . . . ." Regs., Conn. State Agencies § 31-301-1. Other provisions of the act reiterate that agency decisions become final if no appeal is taken within twenty days, but they do not address whether the twenty day limitation in § 31-301 (a) is jurisdictional. See General Statutes § 31-299b (employers and insurers must appeal within twenty days from commissioner's decision regarding last employer's liability for benefits); General Statutes § 31-301a (in absence of appeal, decision of board becomes final after twenty days).

eral Statutes § 1-2z; see also *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 380, 870 A.2d 457 (2005) (looking to "the genealogy and legislative history of the statute, as well as our case law addressing the policy underlying the statute" to determine whether legislature intended to impose subject matter jurisdictional requirement); *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993) (in seeking to discern whether legislature intended time limitation to implicate subject matter jurisdiction, court looks to language of statute, its legislative history, policy it was designed to implement, and its relationship to existing legislation and common-law principles governing same general subject matter).

We first examine the legislative history of § 31-301 (a) in order to determine whether the board's time-tested interpretation is reasonable. See General Statutes § 1-2z; see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 308, 819 A.2d 260 (2003) (this court has stated that "[s]tatements of legislators often provide strong indication of legislative intent" [internal quotation marks omitted]). The legislature adopted the present version of § 31-301 (a) setting forth a twenty day appeal period as part of Public Acts 2001, No. 01-22, § 1 (P.A. 01-22), which repealed the prior version of § 31-301 (a) that had contained a ten day appeal period.[16]

---

[16] The twenty day appeal period in § 31-301 (a) is identical to the period set forth in Practice Book § 63-1 governing appeals from the Superior Court to the Supreme Court. This court has held that "the twenty day limitation in the rules of practice is not an absolute bar to the filing of a late appeal." *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 104, 900 A.2d 1242 (2006). There is no evidence in the legislative history, however, that the legislature intended to incorporate the discretionary aspect of Practice Book § 63-1 into the appeal period in § 31-301 (a) when it expanded the appeal period from ten to twenty days. Moreover, unlike the established case law acknowledging this court's discretion in entertaining untimely appeals, there is no similar case law with respect to appeals to the board.

The legislative history of P.A. 01-22 reveals the legislature's remedial purpose in extending the appeal period from ten to twenty days. Under the former ten day period, parties appealed decisions of commissioners as a routine matter, motivated by "fear" that an appeal outside the ten day period would be dismissed by the board as untimely. This resulted in needless appeals, decreased efficiency of the workers' compensation system, and unnecessarily postponed the finality of commissioners' decisions.

Representative Arthur J. Feltman, addressing the House of Representatives, explained that "the ten day period . . . is deemed by everyone on both sides of the [bar] as too short and consequently appeals are filed just to preserve people's right to appeal when they ultimately, upon reconsideration, decide that an appeal isn't justified." 44 H.R. Proc., Pt. 6, 2001 Sess., p. 1749. In the Senate, Senator Eric D. Coleman likewise stated that "under the current and existing law, [the] period of time [to file an appeal] is ten days from the date that the decision is mailed and what happens very frequently is, that period of time proves to be too short. Most of the practitioners, the attorneys who are working in the field of workers' compensation just automatically file appeals for fear that they will miss the deadline because it is so short . . . .

"What the bill before us does is, extend the period of time for the appeal to be taken from ten days to [twenty] days and it is felt by the [judiciary committee] and those who testified concerning the issue at the public hearing that this [twenty] day period would be sufficient in order to enable practitioners to make . . . reasoned and informed decision[s] concerning whether to appeal or not.

"The result is that there will be many fewer appeals and that the business will flow much more smoothly and efficiently." 44 S. Proc., Pt. 4, 2001 Sess., pp. 1184–85.

Attorney David Schoolcraft, speaking before the judiciary committee[17] in favor of the extended appeal period on behalf of the Workers' Compensation Section of the Connecticut Bar Association, similarly opined that "[t]he result of this short period of time, which is half the period provided in civil appeals, is that appeals in [w]orkers' [c]ompensation become virtually automatic. An aggrieved party, whether it be a claimant or a respondent does not often have the time to consult with their client, let alone consult with their client and give them some time to think about whether or not they want to take an appeal.

"Frankly, with the ten day statute, the fear of missing the statute of limitation[s], if you're a lawyer, is so [overpowering] that taking an appeal to the [board] becomes virtually a reflex." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 2001 Sess., p. 1148.

The references in the legislative history to workers' compensation attorneys' "fear" of accidentally filing an appeal outside the statutory period is best understood in light of the board's recognized practice of dismissing untimely appeals. The legislative history strongly indicates that the legislature, aware of this fear, expanded the appeal period both to allay the parties' fear of filing an untimely appeal as well as grant parties additional time to evaluate the merits of filing an appeal. There is, however, no evidence in the legislative history that the legislature intended its extension of the appeal

---

[17] Although this court usually limits its review of legislative history to remarks made during debates on the floor of the House of Representatives or the Senate, "[w]e have recognized that testimony before a legislative committee may be relevant to a statutory analysis because such testimony tends to shed light on the problems that the legislature was attempting to resolve in enacting the pertinent legislation." *State* v. *Orr*, 291 Conn. 642, 675, 969 A.2d 750 (2009); see also *Mahoney* v. *Lensink*, 213 Conn. 548, 559 n.15, 569 A.2d 518 (1990) ("[w]e have occasionally . . . cast a wider net, when committee testimony contains particularly compelling evidence about the problem, issue or purpose underlying a statute").

period to overturn established board jurisprudence interpreting the appeal period set forth in § 31-301 (a) as subject matter jurisdictional.

The legislative policies underlying the act also support the board's interpretation that the twenty day limitation set forth in § 31-301 (a) deprives the board of subject matter jurisdiction over an untimely appeal. This court previously has described these important policies as providing "a speedy, effective and inexpensive method for determining claims for compensation." *Chieppo* v. *Robert E. McMichael, Inc.,* 169 Conn. 646, 653, 363 A.2d 1085 (1975). The importance of the prompt resolution of claims is demonstrated by § 31-301 (e), which mandates that the chairman of the workers' compensation commission adopt regulations "expedient for the purposes" of workers' compensation appeals. The resulting regulation provides that an "appeal shall be filed within twenty days after the entry of such award or decision . . . ." Regs., Conn. State Agencies § 31-301-1. Likewise, the act stresses the significance of finality, and the resulting right to enforce a commissioner's decision, when it expressly provides that a commissioner's decision becomes final after twenty days, in the absence of a timely appeal. General Statutes § 31-300.

The aforementioned legislative history of § 31-301 (a) further demonstrates the legislature's concern with impediments to the legislative policies of promptness and finality that are embodied in the act. As the legislative history makes clear, the prior ten day appeal period undermined these policies because parties, constrained by the short appeal period, felt pressured to file an appeal regardless of whether they fully considered its merits. The legislature intended that enlarging the appeal period to twenty days would expedite the filing of meritorious appeals and would also prevent the indefinite postponement of finality because of unnecessary appellate litigation. Limiting the time within which par-

ties may elect to appeal, and dismissing an untimely appeal for lack of jurisdiction, is consistent with the act's emphasis on the prompt disposition and definitive resolution of claims.

This court previously has relied on the public policies of promptness and finality in concluding that statutory appeal periods implicate subject matter jurisdiction. In *HUD/Barbour-Waverly* v. *Wilson*, 235 Conn. 650, 656, 668 A.2d 1309 (1995), this court concluded that the five day time limit to appeal set forth in General Statutes § 47a-35 was a jurisdictional prerequisite to taking an appeal from a housing court ruling in a summary process eviction proceeding. In reaching this conclusion, the court relied on the legislative policy that the statute had been designed to implement—namely, an expeditious and economical remedy for landlords to repossess properties—and determined that such policy supported the conclusion that the five day period was jurisdictional. Id., 658. Similarly, in *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 758–62, we concluded that an appeal from the denial of a prejudgment remedy taken after the expiration of the seven day time period specified by General Statutes § 52-278*l* implicated this court's subject matter jurisdiction. In that case, this court described the public policies embodied in the statute as "permit[ting] the parties to know within a very brief period of time whether the order [was] final or [was] going to be challenged on appeal." Id., 767. A construction of § 31-301 (a) in the present case that concludes that the twenty day period is merely directory and nonjurisdictional would permit parties to appeal outside the expressly stated statutory twenty day limit, hinder the legislature's preference for "speedy" resolution of workers' compensation claims, and undermine statutorily mandated finality.[18]

---

[18] As The Hartford notes, it would be inconsistent with the aforementioned statutory scheme if the legislature had intended to permit an untimely appeal to circumvent or forestall ongoing, or even completed, enforcement of a

Additionally, this court previously has concluded that time constraints on appeals set forth in statutory schemes that are in derogation of the common law implicate subject matter jurisdiction. See, e.g., *HUD/Barbour-Waverly* v. *Wilson*, supra, 235 Conn. 658; *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 767. The statute at issue in the present case, § 31-301 (a), is part of the act, and the act "is a statutory scheme in derogation of [the] common law . . . ." (Internal quotation marks omitted.) *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 297, 627 A.2d 1288 (1993). The reasoning in *Ambroise* is therefore instructive to the issue before us: "It is significant, furthermore, that [§ 31-301 (a)] contains a statutory time period for taking an appeal with regard to a statutory remedy that has no common law counterpart. The right to [workers' compensation] is purely statutory. . . . Where . . . a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter. . . . In such cases, the time limitation is not to be treated as an ordinary statute of limitation, but rather is a limitation on the liability itself, and not of the remedy alone. . . . [U]nder such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised . . . at any time, even by the court sua sponte, and may not be waived. . . . It is reasonable to infer, therefore, that the legislature intended the limitation on the right to appeal contained in [§ 31-301 (a)] to operate similarly to [other] statutory time limitations on the right to initiate a statutory action." (Citations omitted; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 766–67; see also *HUD/Barbour-Waverly* v. *Wilson*, supra, 657

commissioner's decision that by operation of § 31-301a had become final after the passage of twenty days without an appeal being filed.

(applying *Ambroise* in determining that appeal pursuant to § 47a-35 must be brought within five days of rendering of summary process judgment). This determination is in accordance with the principle that, although the act "should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citations omitted; internal quotation marks omitted.) *Kinney* v. *State*, 213 Conn. 54, 59, 566 A.2d 670 (1989).

In accordance with this principle, this court has held that the statutory time limit for a dependent to file a claim for survivor benefits under the act must be strictly construed because the commission's authority must be strictly construed in accordance with its statutory mandate. *Kuehl* v. *Z-Loda Systems Engineering, Inc.*, 265 Conn. 525, 538, 829 A.2d 818 (2003); see id., 538–39 ("We have previously observed that the workers' compensation commission, like any administrative body, must act strictly within its statutory authority . . . . It cannot modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power." [Internal quotation marks omitted.]).

The fund asserts, however, that the decision in *Murphy* v. *Elms Hotel*, supra, 104 Conn. 351, dictates the outcome of the present case. We conclude that *Murphy* does not control the result in this case.

In *Murphy* v. *Elms Hotel*, supra, 104 Conn. 352–53, the issue before the court was whether the trial court properly had granted the defendant's motion to dismiss the plaintiff's untimely appeal from a finding and award of a commissioner. At that time, the applicable statute, General Statutes (1918 Rev.) § 5366, as amended by Public Acts 1919, c. 142, § 14, provided a ten day period

within which to file an appeal.[19] Notably, the statute at
that time required an appeal to the Superior Court, not
to the board. Accordingly, different concerns came into
play on that basis. Indeed, had that procedure remained
in place, our conclusion in the present case might be
different. Addressing the plaintiff's untimely appeal, the
court in *Murphy* concluded that "[t]he failure to take
the appeal within the ten-day period did not make the
appeal void, but merely voidable."[20] *Murphy* v. *Elms
Hotel*, supra, 353. The court arrived at this conclusion
wholly in reliance on its decision in *Orcutt's Appeal
from Probate*, 61 Conn. 378, 24 A. 276 (1892), which
held that an untimely appeal to the Superior Court from
the Probate Court was voidable, but not void. *Murphy*
v. *Elms Hotel*, supra, 353. The court in *Murphy*, stating
without explanation or analysis that a "similar construc-
tion must be given to the appeal allowed in this case";
id.; quoted the court's reasoning in *Orcutt's Appeal from
Probate*, supra, 384, which stated that the legislature
had not intended for the probate statutes' appeal period
to limit the power of the reviewing court to grant or
dismiss an untimely appeal and that, although the pro-
bate statutes provided that an appeal "shall be taken
within a certain time," there was no language in the
statutes necessarily prohibiting the Probate Court from
granting an appeal even after the period had expired.
(Internal quotation marks omitted.) *Murphy* v. *Elms
Hotel*, supra, 353.

---

[19] General Statutes (1918 Rev.) § 5366, as amended by Public Acts 1919,
c. 142, § 14, provides in relevant part: "At any time within ten days after
entry of such finding and award by the commissioner either party may
appeal therefrom to the superior court for the county in which the award
was filed. . . ."

[20] The court first concluded that the legislature's intent must have been
for the ten day limitation to commence after notice to the party of the entry
of a decision, otherwise the taking of an appeal would be fruitless where
the commissioner had failed to deliver notice to the party. *Murphy* v. *Elms
Hotel*, supra, 104 Conn. 352. The validity of this conclusion is not at issue
in this appeal.

We agree with The Hartford's assertion that the *Murphy* decision, viewed in its entirety, reveals that the primary concern motivating the court was the nature of the pleading the defendant had employed in attacking the plaintiff's untimely appeal. "The failure to take the appeal within the ten-day period did not make the appeal void, but merely voidable. Objection to an appeal taken after the time for taking an appeal has expired, under our practice, must be taken by plea in abatement and not by motion to dismiss . . . ." Id. "The motion to dismiss an appeal is an appropriate remedy where the court is without jurisdiction . . . . Wherever the motion to dismiss . . . an appeal contains affirmative allegations requiring proof essential to the determination of the question involved, or relates to the manner in which the appeal was taken, a plea in abatement, and not a motion to dismiss . . . is the appropriate remedy. . . . The motion to dismiss the appeal because not seasonably taken should have been denied." (Citations omitted.) Id., 354.

The conclusion that *Murphy* principally addressed the proper pleading with which to challenge an untimely appeal is reinforced by that decision's lack of analysis of the then existing workers' compensation statutes, except as to the court's determination that the prior ten day appeal period commenced after notice had been given to the parties. *Murphy* does not contain any independent analysis of the subject matter implications of a pleading, itself timely or not, challenging an untimely appeal brought under the then existing workers' compensation statutes. *Murphy* was preoccupied with antiquated equity pleading, and, more significantly, it referenced, but failed to analyze, workers' compensation statutes that themselves have since been repealed and replaced. See Public Acts 1961, No. 491. *Murphy* should be limited to its facts. Accordingly, *Murphy* does not make unreasonable the board's interpretation that

an appeal filed outside the twenty day period set forth in § 31-301 (a) deprives the board of subject matter jurisdiction over such an untimely appeal.[21]

The fund additionally claims that the absence of references to subject matter jurisdiction or *Murphy* in the legislative history of Public Act 01-22 demonstrates that the twenty day appeal period is merely a voidable statute of limitations. We disagree. "[W]e . . . presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." *State* v. *Canady*, 297 Conn. 322, 333, 998 A.2d 1135 (2010). Under the facts of this case, the legislature's nonaction cannot be viewed as a validation of *Murphy*, a 1926 decision interpreting the 1918 act, which was repealed and replaced in 1961. See Public Acts 1961, No. 491. On the contrary, the presumption of legislative acquiescence more properly applies to the three

---

[21] In the more than eighty years since *Murphy* was decided, our research reveals that this court has cited to it twelve times, the vast majority of which either concern the appropriate use of various equity pleadings; see footnote 20 of this opinion; or the resolution of when an appeal period commences where notice of a decision was not promptly received by an aggrieved party. See *Reilly* v. *Pepe Co.*, 108 Conn. 436, 443, 143 A. 568 (1928) (equity pleading usage); *Ragali* v. *Holmes*, 111 Conn. 663, 664, 151 A. 190 (1930) (same); *Avery's Appeal*, 117 Conn. 201, 202, 167 A. 544 (1933) (same); *State* v. *Boucher*, 119 Conn. 436, 442, 117 A. 383 (1935) (same); *New Haven Loan Co.* v. *Affinito*, 122 Conn. 151, 153, 188 A. 75 (1936) (same); *Hubbard* v. *Planning Commission*, 151 Conn. 269, 272, 196 A.2d 760 (1963) (notice); *Douglas* v. *Warden*, 218 Conn. 778, 786, 591 A.2d 399 (1991) (whether prisoner failed to prosecute his appeal diligently was not issue requiring Appellate Court to remand to trial court for evidentiary hearing); *Kudlacz* v. *Lindberg Heat Treating Co.*, 250 Conn. 581, 588, 738 A.2d 135 (1999) (notice); *Schreck* v. *Stamford*, 250 Conn. 592, 597, 737 A.2d 916 (1999) (same); *Kulig* v. *Crown Supermarket*, 250 Conn. 603, 608, 738 A.2d 613 (1999) (same). Our research has revealed only one decision in which this court referenced *Murphy* for the proposition claimed by the fund on appeal, namely, our 2001 decision in *Matey* v. *Estate of Dember*, 256 Conn. 456, 474–75, 774 A.2d 113 (2001). We note that this portion of *Matey* is dicta that was "unnecessary to the holding in the case." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009).

decades of board decisions from 1980 to 2010; *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 164, 931 A.2d 890 (2007) ("in certain circumstances, the legislature's failure to make changes to a long-standing agency interpretation implies its acquiescence to the agency's construction of the statute" [internal quotation marks omitted]); and the trio of Appellate Court decisions in the 1990s; *Vega* v. *Waltsco, Inc.*, supra, 46 Conn. App. 298; *Cyr* v. *Domino's Pizza*, supra, 45 Conn. App. 199; *Freeman* v. *Hull Dye & Print, Inc.*, supra, 39 Conn. App. 717; that have interpreted § 31-301 (a) as depriving the board of subject matter jurisdiction over an untimely appeal. *State* v. *Fernando A.*, 294 Conn. 1, 20 n.15, 981 A.2d 427 (2009) (doctrine of legislative acquiescence applies to decisions of Supreme Court and Appellate Court).

Lastly, the fund claims that prior decisions of this court, interpreting analogous language concerning statutory filing periods, support its claim that § 31-301 (a) does not deprive the board of jurisdiction over an untimely appeal. We disagree. Although the statute in *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, supra, 273 Conn. 381, contained similar temporal restrictions concerning the time within which a complaint should be investigated and a final administrative disposition made, the statute in that case also explicitly provided that the commission on human rights and opportunities retained jurisdiction over a complaint in cases where it failed to complete its investigation within the prescribed period. Likewise, in *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 271, 777 A.2d 645 (2001), where the statute also contained language establishing a time period within which a complaint alleging discrimination must be filed, we found it significant that there was already "a well established judicial gloss" interpreting that statute as not implicating the

commission's subject matter jurisdiction. *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 811 A.2d 693 (2003), is also inapplicable to the present appeal because, although the statute therein also contained a time limitation within which an application of reassessment of damages must be filed in the Superior Court, it was important that the statute there served as a mechanism to enforce the common-law right to compensation for governmental takings, as opposed to a time limitation on the enforcement of a right specifically created by statute, such as the workers' compensation statutes at issue in this appeal. Id., 266 n.12. Lastly, *Phinney* v. *Rosgen*, 162 Conn. 36, 41, 291 A.2d 218 (1971), is unpersuasive because, for the reasons mentioned in our discussion of *Murphy*, it relied on *Orcutt's Appeal from Probate*, supra, 61 Conn. 378, in determining that appeal limitations set forth in former probate statutes were not subject matter jurisdictional.

Our examination of the plain language of § 31-301 (a), its relationship to related statutes, its legislative history, and the policy considerations underlying § 31-301 (a) demonstrates that the board's interpretation is both time-tested and reasonable and therefore entitled to deference. Accordingly, we conclude that the failure to take an appeal within the twenty day appeal limitation set forth in § 31-301 (a) deprives the board of subject matter jurisdiction, a defect that may be raised at any time. As a result, the fund's appeal, taken thirteen months after the commissioner's October 3, 2005 finding and award, was untimely. Therefore, The Hartford properly could raise the board's subject matter jurisdiction over the fund's appeal at any time without waiving that claim, and the board properly granted The Hartford's motion to dismiss the fund's appeal.

The fund, pursuant to Practice Book § 84-11 (a),[22] asserts three alternative grounds for affirming the judg-

---

[22] Practice Book § 84-11 (a) provides in relevant part: "Upon the granting of certification, the appellee may present for review alternative grounds

ment of the Appellate Court. Specifically, the fund claims that: (1) The Hartford lacks standing to pursue a challenge to the fund's appeal of the commissioner's decision; (2) the fund's appeal was timely because its standing to appeal the commissioner's decision matured only after the commissioner issued the October 25, 2006 order, directing it to pay the award; and (3) the fund's appeal was timely because the commissioner's October 25, 2006 supplemental order constituted a final judgment for purposes of appeal. We address each alternative ground in turn.[23]

The fund asserts as its first alternative ground that The Hartford lacks standing to challenge the fund's appeal because The Hartford's liability is limited and predicated on its potential role as a future derivative

upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . . If such alternative grounds for affirmation . . . were not raised in the appellate court, the party seeking to raise them in the supreme court must move for special permission to do so prior to the filing of that party's brief. Such permission will be granted only in exceptional cases where the interests of justice so require."

[23] The Hartford correctly notes that the fund did not raise or brief these alternative issues before the Appellate Court. Although the fund submitted a statement of alternative grounds to this court, the fund failed to request permission from this court to present these alternative grounds for review. As to the fund's first alternative ground, because it claims that The Hartford lacks standing to pursue this appeal, we will address this claim because "[o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented." *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 398 n.10, 941 A.2d 868 (2008). As to the fund's second and third alternative grounds, although the fund failed to abide by § 84-11 (a), "we have refused to consider an issue not contained in a preliminary statement of issues only in cases in which the opposing party would be prejudiced by consideration of the issue." (Internal quotation marks omitted.) *State* v. *Cruz*, 269 Conn. 97, 99 n.2, 848 A.2d 445 (2004). Although The Hartford raised the fund's failure to abide by § 84-11 (a), The Hartford did not set forth how it was prejudiced by this failure. Indeed, The Hartford fully responded to the fund's claims in its reply brief. Moreover, because we ultimately conclude that the fund's alternative grounds do not warrant affirming the judgment of the Appellate Court, we do not find it inappropriate to consider them.

obligor under General Statutes § 31-299b,[24] and, the fund asserts, possible derivative injuries to third parties do not confer standing. The Hartford disagrees, claiming that the commissioner's October 3, 2005 finding and award conclusively determined that The Hartford had no liability to pay the award because Raymark was self-insured as it pertained to manufacturing employees like the decedent. Consequently, The Hartford asserts that it has standing because the fund, if successful on appeal, will relitigate its prior claim that insurance policies issued by The Hartford covering clerical and sales staff also covered employees like the decedent. We agree with The Hartford that it has standing to challenge the fund's appeal.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction

[24] General Statutes § 31-299b provides: "If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within twenty days, the order shall be final and may be enforced in the same manner as a judgment of the Superior Court. For purposes of this section, the Second Injury Fund shall not be deemed an employer or an insurer and shall be exempt from any liability. The amount of any compensation for which the Second Injury Fund would be liable except for the exemption provided under this section shall be reallocated among any other employers, or their insurers, who are liable for such compensation according to a ratio, the numerator of which is the percentage of the total compensation for which an employer, or its insurer, is liable and the denominator of which is the total percentage of liability of all employers, or their insurers, excluding the percentage that would have been attributable to the Second Injury Fund, for such compensation."

of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 207, 994 A.2d 106 (2010).

The Hartford satisfies the twofold requirement for classical aggrievement. First, The Hartford has a specific personal and legal interest in the commissioner's favorable October 3, 2005 finding and award dismissing the fund's claims against it. The commissioner specifically concluded in that decision that Raymark was self-insured with regard to manufacturing employees like the decedent, and the commissioner credited testimony that The Hartford could not locate any policies issued to Raymark for workers' compensation coverage. The commissioner accordingly concluded that "I find there is no credible evidence that [The Hartford] insured the [Raymark] manufacturing/blue collar employees. The claims, as brought forward by the [fund], that [The Hartford is the] responsible [carrier] are hereby dismissed." Second, The Hartford's personal and legal interest has been specially and injuriously affected by

the judgment of the Appellate Court beyond a mere possibility. The judgment of the Appellate Court would permit the fund to relitigate its previously dismissed claims that The Hartford is liable for payment of the award. The fund repeatedly has contested the validity of the commissioner's October 3, 2005 finding and award, seeking to relitigate its claim that The Hartford may be liable for the award.[25] Likewise, The Hartford consistently has been obligated to defend the decision dismissing the fund's claims against it, including defending the board's dismissal of the fund's appeal before the Appellate Court, and now this court. Accordingly, we conclude that The Hartford has standing to pursue its challenge to the fund's appeal.

The fund's second and third alternative grounds are related and we therefore address them together. In its second alternative ground, the fund claims that its appeal to the board was, in fact, timely because its standing to appeal the commissioner's October 3, 2005 finding and award matured only after the commissioner issued the October 25, 2006 order, directing it to pay the award. In its third alternative ground, the fund claims that its appeal was timely because the commissioner's October 25, 2006 supplemental order, constituted a final judgment for purposes of appeal. The fund's second and third alternative grounds in this appeal are identical to the principal claims it asserted on appeal in the companion case also released today. See *Dechio* v. *Raymark Industries, Inc.*, 299 Conn. 376, 10 A.3d 20 (2010). For the reasons discussed in *Dechio*, we reject the fund's second and third alternative grounds

---

[25] Specifically, the fund first filed a motion to correct, asserting that the findings and conclusions regarding The Hartford's liability were incorrect. The Hartford properly objected to the fund's motion to correct, and the commissioner denied the fund's motion. The fund then filed the present appeal to the board in which it again claimed, inter alia, that the commissioner incorrectly found and concluded that The Hartford had no liability for payment of the award.

for affirmance. See id., 397–402. In short, "given the fund's participation in [the *Stec*] proceedings . . . the twenty day appeal period of § 31-301 (a) began to run with the issuance of the [October 3, 2005] order, which established a lack of other coverage [to pay the award in favor of the plaintiff] and made clear the fund's potential liability for payment of the plaintiff's benefits." Id., 388. Accordingly, in the present case, the fund's November 13, 2006 appeal to the board was untimely and, in light of the foregoing analysis of § 31-301 (a), the board properly dismissed the fund's untimely appeal for lack of subject matter jurisdiction.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the decision of the compensation review board.

In this opinion the other justices concurred.