### LOVIE DECHIO *v.* RAYMARK INDUSTRIES, INC., ET AL.
### (SC 18413)

Rogers, C. J., and Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 21—officially released December 28, 2010

*Philip M. Schulz,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant second injury fund).

*Maribeth M. McGloin,* for the appellee (defendant Zurich Insurance Company).

*Lucas D. Strunk* filed a brief for the appellee (defendant Hartford Insurance Group).

*Christopher Meisenkothen* filed a brief for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The sole issue in this certified appeal is whether, in cases wherein the defendant, the second injury fund (fund), has participated in proceedings before the workers' compensation commission (com-

mission), the twenty day appeal period provided by General Statutes § 31-301 (a)[1] for the fund to challenge an adverse ruling of a workers' compensation commissioner (commissioner) by appealing to the compensation review board (board), does not commence until the commissioner's issuance of a supplemental order directing the fund to pay benefits pursuant to General Statutes § 31-355 (supplemental order),[2] rather than upon the issuance of the challenged order. The fund

[1] General Statutes § 31-301 (a) provides: "At any time within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days thereafter shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties. If a party files a motion subsequent to the finding and award, order or decision, the twenty-day period for filing an appeal of an award or an order by the commissioner shall commence on the date of the decision on such motion."

Although § 31-301 (a) was amended in 2007; see Public Acts 2007, No. 07-31; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 31-301 (a).

[2] General Statutes § 31-355 provides in relevant part: "(a) The commissioner shall give notice to the Treasurer of all hearing of matters that may involve payment from the Second Injury Fund, and may make an award directing the Treasurer to make payment from the fund.

"(b) When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. Whenever liability to pay compensation is contested by the Treasurer, the Treasurer shall file with the commissioner, on or before the twenty-eighth day after the Treasurer has received an order of payment from the commissioner, a notice in accordance with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. A copy of the notice shall be sent to the employee. The commissioner shall hold a hearing

appeals, upon our grant of its petition for certification,[3] from the judgment of the Appellate Court affirming the board's decision dismissing, as untimely, its appeal from the supplemental order of the commissioner, ordering it to pay benefits pursuant to General Statutes § 31-306[4] to the plaintiff, Lovie Dechio, the surviving spouse of Peter Dechio (decedent), a longtime manufacturing employee of the named defendant, Raymark Industries, Inc. (Raymark).[5] *Dechio* v. *Raymark Industries, Inc.*, 114 Conn. App. 58, 59–61, 968 A.2d 450 (2009). Guided primarily by our decision in *Matey* v. *Estate of Dember*, 256 Conn. 456, 774 A.2d 113 (2001), we conclude that the fund's right to appeal, or otherwise preserve its appellate rights under Practice Book § 61-5,[6] accrued

on such contested liability at the request of the Treasurer or the employee in accordance with the provisions of this chapter. If the Treasurer fails to file the notice contesting liability within the time prescribed in this section, the Treasurer shall be conclusively presumed to have accepted the compensability of such alleged injury or death from the Second Injury Fund and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or contest the extent of the employee's disability. . . ."

[3] We granted the fund's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the workers' compensation review board's dismissal of the second injury fund's appeal from an order to pay workers' compensation benefits pursuant to . . . § 31-355, on the ground that the . . . fund's appeal was untimely?" *Dechio* v. *Raymark Industries, Inc.*, 293 Conn. 902, 975 A.2d 1277 (2009).

[4] General Statutes § 31-306 (a) provides in relevant part: "Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease . . . ."

[5] In addition to the fund, the other defendants appearing in this appeal are Raymark's workers' compensation insurance carriers, The Hartford Insurance Group (The Hartford) and the Zurich Insurance Company (Zurich). We refer to them individually where appropriate, and collectively as "the carriers."

[6] Practice Book § 61-5 provides in relevant part: "(a) When notice of intent to appeal required; procedure for filing

"An appeal of a judgment described in Sections 61-2 or 61-3 may be deferred until the judgment that disposes of the case for all purposes and as to all parties is rendered. In the following two instances only, a notice of intent to appeal must be filed in order to defer the taking of an appeal until the final judgment that disposes of the case for all purposes and as to all parties is rendered:

when the commissioner issued a finding and award that established the compensability of the plaintiff's claim and determined that there was no other insurance coverage available, thereby rendering the fund's liability for those benefits probable, rather than when the commissioner later rendered a supplemental order pursuant to § 31-355 directing the fund to pay those benefits in Raymark's stead. Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court's opinion aptly sets forth the following facts and procedural history. "On December 12, 1981, [the decedent], a retired, longtime blue collar

"(1) when the deferred appeal is to be taken from a judgment that not only disposes of an entire complaint, counterclaim or cross complaint but also disposes of all the causes of action brought by or against a party or parties so that that party or parties are not parties to any remaining complaint, counterclaim or cross complaint; or

"(2) when the deferred appeal is to be taken from a judgment that disposes of only part of a complaint, counterclaim, or cross complaint but nevertheless disposes of all causes of action in that pleading brought by or against a particular party or parties.

"In the event that the party aggrieved by a judgment described in (1) or (2) above elects to defer the taking of the appeal until the disposition of the entire case, the aggrieved party must, within the appeal period provided by statute, or, if there is no applicable statutory appeal period, within twenty days after issuance of notice of the judgment described in (1) or (2) above, file in the trial court a notice of intent to appeal the judgment, accompanied by a certification that a copy thereof has been served on each counsel of record in accordance with the provisions of Section 62-7.

"When a notice of intent to appeal has been filed in accordance with this subsection, an objection to the deferral of the appeal may be made by (1) any party who, after the rendering of judgment on an entire complaint, counterclaim or cross complaint, is no longer a party to any remaining complaint, counterclaim, or cross complaint, or (2) any party who, by virtue of a judgment on a portion of any complaint, counterclaim, or cross complaint, is no longer a party to that complaint, counterclaim, or cross complaint. Objection shall be filed in the trial court, within twenty days of the filing of the notice of intent to appeal, accompanied by a certification that a copy thereof has been served on each counsel of record in accordance with the provisions of Section 62-7.

"When such a party has filed a notice of objection to the deferral of the appeal, the appeal shall not be deferred, and the appellant shall file the appeal within twenty days of the filing of such notice of objection. . . ."

worker for [Raymark],[7] died from complications resulting from lung cancer. [The decedent] was the plaintiff's husband of nearly forty years at the time of his death. On June 24, 1988, the commission rendered a finding and award that found, inter alia, that [the decedent] died as a result of his exposure to asbestos arising out of and during the course of his employment with Raymark and that [the plaintiff] was entitled to benefits from [the decedent's] date of death until [the plaintiff's] death or remarriage pursuant to . . . § 31-306.[8] The commissioner ordered Raymark to pay those benefits and stated that a hearing would be held to determine [the decedent's] average weekly wage. In 1988, Raymark entered involuntary bankruptcy, from which it briefly emerged in 1996. As a result, hearings on the compensation rate were not held until August and September, 1997. A decision was not reached, however, because Raymark entered voluntary bankruptcy in March, 1998, again putting a halt to the proceedings.

"The plaintiff then sought relief from the automatic stay provisions of federal bankruptcy law[9] so as to allow her to pursue payment from the fund under § 31-355. On June 29, 2000, the plaintiff received an order from the Bankruptcy Court granting her relief from the automatic stay, which, in turn, allowed her to pursue her workers' compensation claim. In 2002, the fund was cited into

[7] "Raymark was formerly known as Raybestos-Manhattan, Inc." *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 62 n.6.

[8] See footnote 4 of this opinion.

[9] "Section 362 (a) of title 11 of the United States Code provides that the filing of a bankruptcy petition with the Bankruptcy Court 'operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy case].' The Bankruptcy Court has the power, however, to grant relief from the automatic stay. See 11 U.S.C. § 362 (d) through (g)." *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 62 n.8.

the proceedings because of its potential liability under § 31-355. Also cited into the proceedings as defendants were [Zurich], [The Hartford], General Reinsurance Group (General Reinsurance) and the Connecticut Insurance Guarantee Association (association).[10] Multiple formal hearings over the subsequent months formed the basis of the September 30, 2005 finding and award issued by [Amado J. Vargas, the workers' compensation commissioner for the fifth district]. In this finding and award, the commissioner found, among other things, that the June 24, 1988 finding and award was proper in all respects and [that] the commissioner had the jurisdiction and authority to hear and rule on the claim. He also found that there was no credible evidence that Zurich or The Hartford had insured Raymark's blue collar, manufacturing employees and dismissed the fund's claims against each of them. He also found, in regard to the association, that pursuant to General Statutes § 38a-838 (6), the claim was not a covered claim, nor did the commission have jurisdiction to determine the association's liability. The commissioner also dismissed the fund's claims against General Reinsurance, finding that the commission lacked the authority and jurisdiction to interpret the contract between General Reinsurance and Raymark.

"The commissioner also found that, at that time, he was precluded from issuing a supplemental order against the fund because, he reasoned, an order must first be issued against Raymark, as the employer of

---

[10] "The association is a nonprofit legal entity established by General Statutes § 38a-839 and governed by the Connecticut Insurance Guaranty Association Act, which is codified at General Statutes § 38a-836 et seq. The association was established to reimburse, to a limited extent, covered claims against insolvent insurers. Here, the association, pursuant to its statutory mandate, was the successor of the Ideal Mutual Insurance Company, which insured Raymark's blue collar employees in the early 1980s and was later adjudicated insolvent." *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 63 n.9.

record. Such an order, however, could not be issued, the commissioner found, because of Raymark's bankruptcy status. The commissioner, however, left open the option of issuing a subsequent order against Raymark if it emerged from bankruptcy or if another relief from [the] automatic stay was issued directly against Raymark by the Bankruptcy Court. Following either of those events, the commissioner could issue a supplemental order against the fund. The commissioner also found [the decedent's] average weekly wage adjusted for cost of living increases to be $337.22 and the resultant statutory compensation rate due the plaintiff to be $224.93. [See General Statutes § 31-310.]

"On December 23, 2005, the Bankruptcy Court granted the plaintiff's motion for relief from the automatic stay and ordered Raymark's automatic stay lifted so as to allow the plaintiff to seek an order directly against Raymark pursuant to the commissioner's September 30, 2005 finding and award.[11] In his September 29, 2006 finding and award, the commissioner directed Raymark to pay all the benefits due the plaintiff under the September 30, 2005 finding and award. He also ratified and made applicable to the fund the June 24, 1988 and September 30, 2005 findings and awards. The

[11] "The Bankruptcy Court issued an amended order for relief from the automatic stay on January 5, 2006. Both this amended order and the December 23, 2005 order, were entered as evidence in the September 27, 2006 formal hearing before the commissioner, which directly preceded the September 29, 2006 finding and award. The January 5, 2006 order from the Bankruptcy Court provides in relevant part: 'The [commission] is authorized to enter an order/award directly against . . . Raymark . . . in order to properly trigger the effect of . . . § 31-355 for the purpose of allowing the movants to collect their duly awarded workers' compensation benefits from the [fund]. The movants shall not seek to collect any damages, settlements, judgments and/or benefits from . . . Raymark . . . individually or from the bankruptcy estate . . . that are or may be awarded in the [commission], but may seek, as allowed by law and consistent with this order, to collect said damages, settlements, judgments and/or benefits from the [fund].' " *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 64 n.12.

order issued against Raymark went unpaid. On October 25, 2006, the commissioner issued a supplemental order directing the fund to pay the plaintiff pursuant to § 31-355. On November 14, 2006, the fund filed a petition for review with the board. On November 20, 2006, the plaintiff [and the carriers] filed a motion to dismiss the fund's petition for review. In its November 28, 2007 opinion, the board granted the plaintiff's motion to dismiss . . . ."[12] (Internal quotation marks omitted.) *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 62–65.

The fund appealed from the board's dismissal order to the Appellate Court, which, in a split decision, affirmed the decision of the board. Id., 75. The Appellate Court majority rejected the fund's argument that, "because no order was specifically issued against it until October 25, 2006, it can challenge the order itself and, in so doing, assail each of the preceding findings and awards through its appeal from that order." Id., 68. Relying on our explication of final judgment principles in the workers' compensation context set forth in *Levarge* v. *General Dynamics Corp.*, 282 Conn. 386, 920 A.2d 996 (2007), the Appellate Court concluded that the supplemental order, from which the fund had appealed, was the result of a ministerial determination following the true appealable final judgment in this case, namely,

[12] We note that, in its analysis, the board referred to its decision in the companion case, *Stec* v. *Raymark Industries, Inc.*, No. 5156, CRB-4-06-11 (November 21, 2007), which similarly is now before this court as a certified appeal. See also footnote 15 of this opinion. The board also relied on, inter alia, *Matey* v. *Estate of Dember*, supra, 256 Conn. 456, and its prior decision in *Delucia* v. *Modena*, 12 Conn. Workers' Comp. Rev. Op. 212 (1994), to conclude that the fund's appeal from the supplemental order, challenging the merits of the September 30, 2005 finding and award, was untimely. Quoting *Matey* v. *Estate of Dember*, supra, 494, the board emphasized that, "where the [fund] has fully participated in proceedings resulting in the commissioner's [f]inding and [a]ward a subsequent order of payment directed against the [f]und did not provide the [f]und with 'yet another opportunity to relitigate its claims.' "

the September 29, 2006 order directing Raymark to pay all benefits due to the plaintiff. See *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 71–74. The Appellate Court concluded, therefore, that, given the undisputed facts surrounding the issuance of the commissioner's decisions, as well as the fact that the fund had failed to preserve its right to appeal from the earlier rulings—and particularly the September 29, 2006 finding and award—by filing a notice of intent to appeal pursuant to Practice Book § 61-5; see id., 68; "it is clear that the petition for review was not filed within the statutory mandate of § 31-301." Id., 74. Given that the plaintiff's motion to dismiss the appeal was timely filed, the Appellate Court concluded that the board properly had dismissed the fund's appeal.[13] Id., 75. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the fund claims that, for purposes of the twenty day appeal period set forth in § 31-301 (a), its appellate rights did not mature until the commissioner issued the supplemental order on October 25, 2006. The fund claims that we must read the appeals provision of § 31-301 (a) in conjunction with the scheme set forth in § 31-355 (b) regarding the provision of notice to the state treasurer, as custodian of the fund, followed by

[13] In dissent, Judge Lavine concluded that the fund's appeal was timely filed because, until the commissioner had ordered it to pay the plaintiff, "the fund was not aggrieved, and there was no final judgment from which it could appeal. In other words, because the fund was under no obligation to pay the plaintiff until ordered to do so, there was no reason, or necessity, for the fund to file an appeal until the supplemental order was issued. The fact that the fund had reason to expect that such an order would be issued does not change my conclusion." *Dechio* v. *Raymark Industries, Inc.*, supra, 114 Conn. App. 75. Relying on our decision in *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 923 A.2d 657 (2007), Judge Lavine further concluded that the commissioner's issuance of the supplemental order was not a ministerial act, because he had to make a factual determination about whether Raymark had failed to pay the plaintiff's benefits as a condition precedent to the fund's liability under *Matey* v. *Estate of Dember*, supra, 256 Conn. 487–88. *Dechio* v. *Raymark Industries, Inc.*, supra, 79–80.

a hearing to be held prior to the issuance of an order directing the fund to pay benefits in cases wherein the employer or carrier has failed to pay benefits. Alternatively, the fund relies on Judge Lavine's opinion dissenting from the judgment of the Appellate Court, as well as *Paranteau* v. *DeVita*, 208 Conn. 515, 544 A.2d 634 (1988), and contends that the supplemental order constituted a substitute judgment that triggered a new appeal period, particularly as, under § 31-355 (b), the initial findings and awards, including those against Raymark, did not create liability on the part of the fund.[14] Along this line, the fund then contends that *Matey* v. *Estate of Dember*, supra, 256 Conn. 456, is not controlling because it did not involve the timeliness of an appeal, but, rather, the fund's request for a trial de novo, and emphasizes that the fund's failure to appeal or file a notice of its intent to appeal thus did not deprive the board of subject matter jurisdiction over its appeal.[15]

In response, the plaintiff, joined by the carriers, contends that, given its participation throughout the lengthy proceedings and "aggressive" litigation of this case, the fund had standing to challenge the commissioner's initial award when it was rendered and did not need to wait until the issuance of the supplemental order in order to appeal, or alternatively, it should have taken steps to preserve its appellate rights by filing a notice of intent to appeal pursuant to Practice Book

[14] The fund similarly contends that, under *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 923 A.2d 657 (2007), the only appealable final judgment for purposes of an appeal to the board was the supplemental order directing payment.

[15] Alternatively, the fund also contends that, even assuming that its appeal was not timely filed, the board nevertheless was not required to dismiss it because the statutory appeal period set forth in § 31-301 (a) is not subject matter jurisdictional. For the reasons discussed in our opinion in the companion case, *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 356-71, 10 A.3d 1 (2010), we disagree, and conclude that the appeal period of § 31-301 (a) is subject matter jurisdictional in nature.

§ 61-5. The plaintiff, relying on *Matey* v. *Estate of Dember*, supra, 256 Conn. 456, argues that separate proceedings were not required under § 31-355 (b) because the fund had the opportunity actively to litigate this case and contest its liability for the plaintiff's benefits throughout the proceedings before the commissioner; the plaintiff maintains that "the fund knew that the previous findings were inexorably building towards an ultimate award against it." To this end, the carriers emphasize that the September 30, 2005 and September 29, 2006 findings and awards establishing compensability and self-insurance were appealable decisions, and that any actions taken thereafter with respect to obtaining relief from Raymark's bankruptcy stay for purposes of the liability finding under § 31-355 (b) were "merely ministerial," given the fact that "[i]t was well known during the pendency of the underlying action that [Raymark] was in bankruptcy and would not be able to pay any award." We agree with the plaintiff and the carriers, and conclude that: (1) given the fund's participation in these proceedings, the notice and hearing provisions of § 31-355 (b) are inapplicable; and (2) therefore, the twenty day appeal period of § 31-301 (a) began to run with the issuance of the September 30, 2005 order, which established a lack of other coverage and made clear the fund's probable liability for payment of the plaintiff's benefits.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construc-

tion given to the workers' compensation statutes by the commissioner and [the] board. . . . [W]e do not afford deference to an agency's interpretation of a statute when . . . the construction of a statute previously has not been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation . . . ." (Citation omitted; internal quotation marks omitted.) *Jones* v. *Redding*, 296 Conn. 352, 362–63, 995 A.2d 51 (2010).

The issue presented is a question of first impression for this court, and neither the parties nor the board assert that a time-tested interpretation exists as to the point at which the fund must appeal from the commissioner's decision under § 31-301 (a).[16] "Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction." (Internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 399, 999 A.2d 682 (2010).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If,

---

[16] We note that the parties have cited an on-point 1994 decision of the board, *Delucia* v. *Modena*, 12 Conn. Workers' Comp. Rev. Op. 212 (1994), on which the board relied in its decision in this case. Inasmuch as the parties have not asserted, and independent research has not revealed, that the board, prior to this case and *Stec* v. *Raymark Industries, Inc.*, No. 5156, CRB-4-06-11 (November 21, 2007), the companion appeal to this case; see footnote 15 of this opinion; has relied on *Delucia* for this point of law, we do not consider it time-tested for purposes of determining the scope of our review in this appeal. See, e.g., *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 448–49, 984 A.2d 748 (2010) (agency interpretation is time-tested if applied consistently on multiple occasions over extended duration).

after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) Id.

We begin, then, with the text of § 31-301 (a), which governs appeals to the board, and provides in relevant part: "At any time *within twenty days after entry of an award by the commissioner, after a decision of the commissioner upon a motion* or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. . . ." (Emphasis added.) "If no appeal from the decision is taken by either party within twenty days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court." General Statutes § 31-300. The plaintiff and the carriers argue that the appeal period under § 31-301 (a) began to run with the commissioner's issuance of the award on September 30, 2005, or, alternatively, on September 29, 2006, the date of the finding and award directing Raymark to pay the plaintiff all benefits due.

The fund contends, however, that the relevant award or decision for purposes of starting the appeal period

set forth in § 31-301 (a) is, in all cases in which the fund is a party, the commissioner's order pursuant to § 31-355 (b) requiring the fund to pay benefits, following a finding that the employer cannot or has not paid benefits. Section 31-355 (b) provides: "When an award of compensation has been made under the provisions of this chapter against an employer who failed, neglected, refused or is unable to pay any type of benefit coming due as a consequence of such award or any adjustment in compensation required by this chapter, and whose insurer failed, neglected, refused or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. *The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. Whenever liability to pay compensation is contested by the Treasurer, the Treasurer shall file with the commissioner, on or before the twenty-eighth day after the Treasurer has received an order of payment from the commissioner, a notice* in accordance with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. A copy of the notice shall be sent to the employee. The commissioner shall hold a hearing on such contested liability at the request of the Treasurer or the employee in accordance with the provisions of this chapter. If the Treasurer fails to file the notice contesting liability within the time prescribed in this section, the Treasurer shall be conclusively presumed to have accepted the compensability of such alleged injury or death from the Second Injury Fund and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or contest the extent of the employee's disability." (Emphasis added.)

At the outset, we observe that the parties' proffered interpretations of §§ 31-301 (a) and 31-355 (b) are reasonable, particularly given the lack of a specific reference in § 31-355 (b) to appeals. The statutes are, therefore, ambiguous with respect to when the appeal period begins to run in cases wherein the fund has participated throughout the proceedings before the commission, rather than first entering the proceedings within twenty-eight days of the treasurer receiving an order to pay benefits. Accordingly, we may consult extratextual evidence in interpreting these statutes. See General Statutes § 1-2z.

As the parties and the board acknowledge, this appeal is not our first opportunity to construe § 31-355 (b), as we previously examined this statute in *Matey* v. *Estate of Dember*, supra, 256 Conn. 456. In our view, our analysis in *Matey* belies the fund's arguments that, under § 31-355 (b): (1) "its appeal period does not begin to run until twenty days following the issuance of an order directing it to pay an award that the employer or its insurer has not paid"; (2) "[i]f jurisdiction exists for the fund to contest liability, a fortiori, the fund could appeal the finding and award instead of requesting a de novo hearing"; and (3) it "is entitled to procedural due process which includes an appeal period that commences only when an order is specifically directed to it."[17] In

---

[17] We disagree with the fund's claim that the analysis of the legislative history of § 31-355 (b) in *Matey* v. *Estate of Dember*, supra, 256 Conn. 491–93, is diminished in persuasive value by the subsequent enactment of § 1-2z because "legislative history is no longer relevant in construing an unambiguous statute." Given our conclusion that the statutory scheme is ambiguous, the legislative history analysis set forth in *Matey* remains relevant to this inquiry. Moreover, even if we were to agree that § 31-355 (b) is unambiguous, the enactment of § 1-2z did not diminish *Matey*'s precedential value. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) (concluding that enactment of § 1-2z was not meant to "overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z"), superseded by statute on other grounds by Public Acts 2009, No. 09-178, § 1.

*Matey*, we rejected the fund's claim that, under § 31-355 (b), "regardless of whether it has participated in the prior litigation of the claim, the commissioner is required to hold a hearing upon notice of the fund's intent to contest liability and a request for a hearing." *Matey* v. *Estate of Dember*, supra, 490. In agreeing with the plaintiff's counterargument "that the statute is intended to provide the fund with an opportunity to contest liability for a claim when it has not had a prior opportunity to do so"; id., 490–91; we found the legislative history of § 31-355 (b), enacted as Public Acts 1991, No. 91-207 (P.A. 91-207), "to be particularly instructive." Id., 491. We noted a debate on the bill on the Senate floor "between Senator Thomas F. Upson and Senator James H. Maloney: 'Senator Upson: . . . My next problem or question would be does this [bill] mean that the claimant who has initially be[en] challenged by an insurance company, whether or not the accident was work related, could that be challenged again once the determination has been made that this is [s]econd [i]njury? That is challenged again by the [fund]? . . .

" 'Senator Maloney: The answer to the question is no. The bill comes into play when the [c]ommissioner orders the payment of benefits from the fund because an employer or insurer failed or was unable to do so, it allows the [t]reasurer to contest the eligibility regardless of whether the employer has already done so. *So it has to do with the issue of contesting eligibility and the intention is if the eligibility has already been contested below, I don't see . . . it is not the intention of the bill to allow it to be relitigated in effect. It is where it has not been contested, the [t]reasurer, under this legislation, would have the right to then make that contest.'* "[18] (Emphasis added.) Id., 491, quoting 34 S.

---

[18] The exchange between Senators Maloney and Upson continued: " 'Senator Upson: . . . [S]o let's say that the claimant files a piece of paper saying I was hurt on the job, files that with the employer. The employer does nothing to respond to this within the [w]orkers' [c]ompensation system and then a motion to preclude is filed by the attorney for the claimant . . . .

Proc., Pt. 6, 1991 Sess., pp. 2003–2004; see also 34 S. Proc., supra, p. 2009, remarks of Senator Maloney ("[a]ll we are saying is if the matter has not been contested in a forum wherein the ultimate defendant didn't have an opportunity to argue the case we should give the defendant the opportunity and that opportunity in this instance amounts to the [s]tate of Connecticut to protect the [s]tate from charges it should not have to pay"); Conn. Joint Standing Committee Hearings, Appropriations, Pt. 1, 1991 Sess., p. 66, remarks of Paul Vitarelli, special investigator for the fund (testifying in support of bill enacted as P.A. 91-207 because, "when the issue of compensability is not clear cut and must be decided as the statute is now written, the fund is precluded from any defense in these cases, resulting in the fund being ordered to pay claims without having the opportunity to defend the claim").

Considering this legislative history, we determined that § 31-355 (b) was not "intended to require the commissioner to provide the fund with an opportunity to contest liability in every case where an order to make payment is entered against the fund, regardless of whether the fund participated in prior proceedings."

And then later on this is given to the [fund] or the [fund] takes over, does this mean that the [fund], through I imagine . . . the [a]ttorney [g]eneral's office, does this mean then that since a motion to preclude has been filed that this cannot be, so to speak, reclaimed or brought up again? . . .

" 'Senator Maloney: The purpose of the bill is to allow precisely that. It is to allow the [t]reasurer to argue that the claimant is not eligible, notwithstanding the fact that the employer on the initial claim did in fact fail to make that claim. It gives the [t]reasurer as the guardian of the [fund] the right to litigate that issue.' 34 S. Proc., Pt. 6, 1991 Sess., pp. 2003–2005.

"Still later during the debate on the bill, Senator Maloney stated that 'we are asking the [t]reasurer to say, well, *I am not going to be bound by the failure of the employer to contest initial eligibility in [fund] cases where the [t]reasurer had no knowledge at the beginning that he was necessarily going to be a party to the ultimate payment.*' Id., p. 2007." (Emphasis added.) *Matey* v. *Estate of Dember*, supra, 256 Conn. 491–92.

*Matey* v. *Estate of Dember*, supra, 256 Conn. 493. Thus, we concluded that "the fund was not entitled to an opportunity to contest liability after the entry of the award in this case. The fund fully participated in the proceedings before the commissioner and the board for more than fourteen years. The fund was permitted to present evidence and arguments to both the commissioner and the board on all of its claims. We cannot conclude that, under these circumstances, § 31-355 (b) was intended to give the fund yet another opportunity to relitigate its claims after entry of the order to make payments. Accordingly, we reject the fund's claim that the commissioner improperly denied it an opportunity to contest liability." Id., 493–94.

Relying on *Matey*, we conclude that § 31-355 (b) is inapplicable in this case, because the fund has participated in these proceedings since 2002 and, thus, cannot contend that it lacked the opportunity to contest its liability for the plaintiff's claim, including the availability of alternate insurance coverage, an issue that it did litigate.[19] We disagree with the fund's attempt to distinguish *Matey* on the ground that the issue therein was whether § 31-355 (b) "provides the fund with the right to retry a case after issuance of an order for the fund to pay benefits pursuant to § 31-355 where it was afforded a full opportunity to do so at the first trial."[20]

---

[19] Also, as in *Matey*, we need not resolve the ambiguity present in the legislative history of § 31-355 (b) concerning "whether the statute was intended to give the fund an opportunity to contest liability only when compensability had not previously been litigated, or also when it had been litigated, but the fund had not had a meaningful opportunity to participate in the proceedings," because, under either reading, § 31-355 (b) does not help the fund in this case. *Matey* v. *Estate of Dember*, supra, 256 Conn. 493.

[20] The fund also relies on our statement in *Matey* responding to the plaintiff's claim that the fund was procedurally barred from raising jurisdictional and third party recovery claims, wherein we observed: "[I]n the proceedings below, the plaintiff repeatedly argued that the fund was barred from raising the jurisdictional claim on appeal to the board because it had not done so within ten days after the October 2, 1990 finding and award. *That award, however, was not directed against the fund, but against Dember's estate.*

Our discussion therein made clear that § 31-355 (b) simply is inapplicable to cases wherein the fund already has participated, as opposed to those cases wherein it receives an order to pay benefits without first having had the opportunity to contest its liability.[21]

An order against the fund was not entered until February 25, 1991, when the fund filed a timely motion to open. Furthermore, even if we were to assume that the fund could have appealed the October 2, 1990 award, we conclude that the plaintiff waived any claim of untimeliness by failing to file a motion to dismiss the fund's motion to open the February 25, 1991 order." (Emphasis added.) *Matey* v. *Estate of Dember*, supra, 256 Conn. 474–75.

We disagree with the fund's reliance on this portion of *Matey*. First, in the present case, significant portions of the September 30, 2005 finding and award determining the existence of insurance coverage were in fact directed at the fund, thereby aggrieving it for purposes of an appeal to the board. Second, this portion of *Matey* is nonbinding dicta, or "merely passing commentary" that was "unnecessary to the holding in the case"; (internal quotation marks omitted) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009); because we already had concluded therein that the fund had properly preserved its claims in the proceedings before the trial commissioner and the board, and there is no indication that the plaintiff had renewed on appeal to this court the timeliness claims that she had raised before the board. But see *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 10 A.3d 1 (2010) (concluding that appeal period set by § 31-301 [a] is subject matter jurisdictional and nonwaivable).

[21] Thus, we also disagree with the fund's reliance on the general proposition that, "[w]hen general and specific statutes conflict they should be harmoniously construed so the more specific statute controls"; (internal quotation marks omitted) *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 177, 931 A.2d 890 (2007); in support of its argument that, as a governmental entity, its appeal rights are governed solely by § 31-355 (b), rather than the more general provisions of § 31-301 (a). First, there is nothing in the language of § 31-355 (b) providing explicitly that an appeal to the board is the procedure for the fund to utilize in contesting its liability.

Second, our interpretation is not swayed by the existence of an "informal agreement," mentioned in the fund's reply brief, between the commission, the office of the attorney general, and the fund "to streamline the hearing process after the legislature amended § 31-355 (b) in 1991, to provide the fund with a hearing in those cases in which it contested liability to pay compensation pursuant to § 31-355." Specifically, the fund posits that "[t]he essence of this agreement was that the fund would not seek a separate de novo formal hearing to contest liability in cases in which it [had] participated in the formal hearing process prior to the issuance of a § 31-355 order to pay compensation. The [c]hairman [of the commission] sought the fund's

Indeed, our conclusion that § 31-355 (b) is inapplicable for purposes of determining when the appeal period begins to run under § 31-301 (a) in cases wherein the fund already has been participating in the proceedings before the commission is consistent with an earlier decision of the board, *Delucia* v. *Modena*, 12 Conn. Workers' Comp. Rev. Op. 212 (1994), which we consider instructive authority in this case. See, e.g., *Jones* v. *Redding*, supra, 296 Conn. 363; see also footnote 16 of this opinion. In *Delucia* v. *Modena*, supra, 216–17, the board concluded, inter alia, that both the fund and a beauty salon were precluded from challenging the commissioner's determination that the salon was the claimant's last employer for purposes of administering the claim and making initial payments pursuant to General Statutes § 31-299b. The board concluded that "neither . . . filed a timely appeal concerning the commissioner's determination that [the salon] was the claimant's last employer prior to the filing of her claim and therefore the initially liable respondent under [§] 31-299b. That determination was explicitly made in the July 21, 1992 [f]inding and [a]ward. [The salon] and the . . . [f]und did not file their appeals until after the commissioner rendered his November 23, 1992 [f]inding and [a]ward [determining the extent of the claimant's disability and awarding benefits]. While the appeals

cooperation in this regard to save the time, money and personnel resources that would have been necessary to provide the fund with a separate hearing process as contemplated by the legislature when it passed the amendment to § 31-355 (b)." The fund argues that this arrangement "was never meant to curtail or impede the fund's appeal rights in cases wherein the employer or carrier has failed to pay benefits. When the provision for a separate hearing to contest fund liability is set aside, the remaining provisions in § 31-355 (b) still provide for an appeals process for the fund that is distinctly different from that of other parties in the workers' compensation forum." Even assuming the propriety of the fund's reliance on an agreement not contained in the record, we nevertheless disagree with its statutory argument because, again, there is nothing in the language of § 31-355 (b) referring specifically to an appeal to the board as the fund's primary procedural vehicle for contesting its liability to pay benefits.

were timely in relation to that later [f]inding and [a]ward, the issue of the initially liable respondent under [§] 31-299b had already been determined and orders to that effect were entered months before. Because no timely appeal had been taken on the [§] 31-299b issue, the commissioner's determination had become final, no longer subject to review." Id. In our view, *Delucia* supports our conclusion that, in the absence of the filing of an appeal to the board or other attempt to preserve appellate rights taken within twenty days of an adverse decision, the commissioner's various determinations became final under § 31-300, even as the proceedings before the commission continued until the issuance of the supplemental order.

Relying on *Paranteau* v. *DeVita*, supra, 208 Conn. 515, the fund contends, however, that the supplemental order constituted a substitute judgment that triggered a new appeal period with respect either to that order *or* the underlying findings and awards upon which it was predicated. We disagree. In *Paranteau*, an action to recover damages for an alleged violation of the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; the defendant had filed his appeal "within twenty days after the order determining the amount of attorney's fees to be awarded the plaintiffs, but more than twenty days after the trial court's judgment on the merits." *Paranteau* v. *DeVita*, supra, 519. After adopting a "bright line rule" that a "judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined"; id., 522–23; this court concluded that only the portion of the appeal challenging the fee award was timely. Id., 524. In our view, *Paranteau* does not support the fund's position in this appeal because, to the extent that it is applicable in the workers' compensation context, the commissioner's supplemental order in this case, like the attorney's

fee award in *Paranteau*, did not disturb the commissioner's earlier findings on the merits of compensability and lack of other insurance coverage, rendering a challenge to the earlier decisions similarly untimely.[22]

Finally, we disagree with the fund's reliance on *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 923 A.2d 657 (2007), for the proposition that, because further proceedings were still required before the commissioner, the fund lacked an appealable final judgment until the issuance of the supplemental order and, therefore, need not have preserved its rights by filing notices of intent to appeal from the earlier adverse decisions pursuant to Practice Book § 61-5. See footnote 6 of this opinion. *Hummel*, which temporarily reaffirmed our jurisprudence imposing a final judgment requirement with respect to appeals from the board to the Appellate Court pursuant to General Statutes § 31-301b, notwithstanding the lack of a final judgment requirement in

---

[22] The fund's reliance on *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006), similarly is misplaced. In *RAL Management, Inc.* v. *Valley View Associates*, supra, 689, we concluded that "the opening and modification of a judgment triggers a new limitations period under which the modified judgment may be opened," and rejected the view that "any modification to a judgment renders the original judgment void such that it extinguishes all rights that flowed from that judgment." We emphasized that a modified judgment is " 'new' " only "to the extent that the supplanted terms no longer exist," and that "there is a substantive distinction between opening a judgment to modify or to alter incidental terms of the judgment, leaving the essence of the original judgment intact, and opening a judgment to set it aside. Under the latter circumstances, the original judgment necessarily has been rendered void and any appeal therefrom would be rendered moot." Id., 690; see also id., 691 (overruling *Milford Trust Co.* v. *Greenberg*, 137 Conn. 277, 77 A.2d 80 [1950], which required filing of new appeal in foreclosure cases where "the only change to the original judgment was an extension of the law days; all other substantive terms of the original judgment were unchanged"). Given our focus in *RAL Management, Inc.* v. *Valley View Associates*, supra, 691–92, on the nature of any modifications to a judgment, that case does not help the fund herein, because the supplemental order did not modify the commissioner's earlier adverse decisions against the fund—indeed, it reaffirmed them and, therefore, did not give rise to a new appeal period under § 31-301 (a).

the text of that statute; see *Hummel* v. *Marten Transport, Ltd.*, supra, 501–502; does not stand for the proposition that appeals from the decisions of a commissioner to the board are subject to the same final judgment requirement imposed by General Statutes § 52-263[23] with respect to appeals from the Superior Court. Moreover, the plain language of § 31-301 (a) lacks any language imposing a final judgment requirement, and we do not read in such a restriction on the right to appeal, particularly given the fact that the legislature has seen fit to address the final judgment concept in subsection (g) of § 31-301, pertaining to a claimant's potential repayment of benefits received during a pending appeal,[24] without importing that language into subsection (a). See, e.g., *Saunders* v. *Firtel*, 293 Conn. 515, 527, 978 A.2d 487 (2009) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omit-

[23] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[24] General Statutes § 31-301 (g) provides: "If the final adjudication results in the denial of compensation to the claimant, and he has previously received compensation on the claim pursuant to subsection (f) and this subsection, the claimant shall reimburse the employer or its insurer for all sums previously expended, plus interest at the rate of ten per cent per annum. Upon any such denial of compensation, the commissioner who originally heard the case or his successor shall conduct a hearing to determine the repayment schedule for the claimant." The board has construed the term "final adjudication" as used in § 31-301 (g) as "synonymous with the term 'final judgment' as it frequently appears in case law." *Bailey* v. *State*, No. 4744, CRB-1-03-10 (December 3, 2004).

ted]); cf. Public Acts 2009, No. 09-178, § 1 (superseding final judgment requirement set forth in *Hummel* v. *Marten Transport, Ltd.*, supra, 477, and amending § 31-301b to permit appeals from decisions of board to Appellate Court "whether or not the decision is a final decision within the meaning of [General Statutes §] 4-183 or a final judgment within the meaning of [§] 52-263"). Indeed, the board's own procedural case law belies the existence of any such final judgment requirement.[25] See *Austin* v. *State*, No. 5014, CRB-8-5-11 (November 8, 2006) ("we have held in the past that the denial of a [m]otion to [p]reclude may be appealed to this board under § 31-301 [a], even though it is not a final judgment for purposes of appeal to a higher court"); *Cutler* v. *State*, No. 3506, CRB-07-96-12 (April 28, 1998) (denying motion to dismiss appeal for lack of "appealable final judgment" because § 31-301 [a] permits "appeal to be filed to the [board] after an award, a 'decision by the commissioner upon a motion,' or after a § 31-299b order").[26] Accordingly, that the commissioner's deci-

[25] Thus, the fund's reliance on *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 695 A.2d 1051 (1997), similarly is misplaced. Nowhere in that opinion do we state or even imply that appeals to the board pursuant to § 31-301 (a) are subject to a final judgment requirement. See id., 292 ("[w]e conclude that the commissioner's oral ruling granting the fund's application for a continuance of the proceeding amounted to a decision on a motion pursuant to § 31-301 [a] and, therefore, that the board properly determined that it had subject matter jurisdiction over [the workers' compensation carrier's] appeal"). The only mention of the final judgment concept in *Hall* is in connection with *this* court's jurisdiction pursuant to § 31-301b over the subsequent appeal from the board's decision to reverse the commissioner's decision and remand the case to the trial commissioner for an evidentiary hearing. See id., 294–301 (declining to overrule case law requiring final judgment for workers' compensation appeal to Supreme and Appellate Court, but deciding case as public interest interlocutory appeal taken pursuant to General Statutes § 52-265a petition).

[26] We acknowledge that, in *Hickey* v. *E.J.C. Transportation*, No. 3180, CRB-5-95-10 (February 5, 1997), the board granted a motion to dismiss an appeal, ostensibly based on lack of a final judgment. We construe *Hickey*, however, as a ripeness case, given the board's reliance on the appellant's concession that "*his* appeal was premature" since "both parties agree that this case is not yet ripe for appeal to this board . . . ." (Emphasis added.)

sions prior to the supplemental order of October 25, 2006, were not "final judgment[s]" as that term has been developed under § 52-263 does not rescue the fund's otherwise untimely subsequent appeal to the board.[27]

Having determined in the present case that § 31-355 (b), and the supplemental order rendered pursuant thereto, are inapplicable for purposes of calculating the appeal period of § 31-301 (a), we next must determine which award or decision started that period and required the fund either to appeal or preserve its appellate rights by filing a notice of intent to appeal pursuant to Practice Book § 61-5.[28] See footnote 6 of this opinion. Given our determination that there is no final judgment rule with respect to appeals from the commissioner to the board, we look, then, to determine which decision or award rendered the fund an aggrieved party by establishing the "possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal

---

[27] We therefore need not reach the question, comprehensively considered by the Appellate Court, of whether the commissioner's determination that Raymark was unable to pay the plaintiff's benefits was ministerial or discretionary in nature for purposes of the final judgment inquiry under, inter alia, *Levarge* v. *General Dynamics Corp.*, supra, 282 Conn. 390, and *Hunt* v. *Naugatuck*, 273 Conn. 97, 104–105, 868 A.2d 54 (2005).

[28] In the absence of the board's promulgation of a contrary rule of procedure, in "workers' compensation cases, the procedure for appealing from the decision of a commissioner is the same as that followed in appealing from a decision of the Superior Court to this court. See General Statutes § 31-301 (e)." *Jones* v. *Redding*, supra, 296 Conn. 365; see also *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 279, 860 A.2d 779 (2004) (citing § 31-301 [e] and Practice Book § 60-5 in connection with conclusion that "the board has the statutory authority to remand a case to the commissioner for articulation"), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). With no contrary administrative rule on point, notices of intent to appeal may, therefore, be utilized in workers' compensation proceedings. Thus, we disagree with the fund's contention that a conclusion that "the fund was required to appeal an earlier decision directed to a party other than the fund creates an environment of uncertainty which would compel the fund to take potentially numerous interlocutory appeals during the formal hearing process."

quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 370, 880 A.2d 138 (2005); see also *Delucia* v. *Modena,* supra, 12 Conn. Workers' Comp. Rev. Op. 216–17 (appeal from determination of initially liable respondent under § 31-299b was untimely when delayed until issuance of award determining extent of claimant's disability and awarding benefits). Having reviewed the record, we conclude that the fund was required to appeal, or preserve its appellate rights, following the commissioner's issuance of the September 30, 2005 finding and award, because that decision rendered the likelihood of its responsibility for the payment of the plaintiff's benefits far more than a speculative possibility, and the issue that the fund sought to challenge on appeal, namely, whether the other carriers were liable, had been determined therein.

Specifically, the September 30, 2005 award rendered the fund an aggrieved party for appellate purposes because the commissioner: (1) upheld the propriety of the initial finding of compensability rendered on June 24, 1988; (2) rejected the fund's claims that the carriers had insured Raymark's manufacturing or blue collar employees and were responsible to pay those benefits pursuant to the June 24, 1988 award; (3) concluded that the commission lacked jurisdiction to determine any liability on the part of the association or General Reinsurance, Raymark's excess insurance carrier; and (4) determined a weekly compensation rate of $224.93 pursuant to § 31-310. Although the commissioner noted that he could not issue an award against the fund at that time because an order first had to issue against Raymark, which was then under bankruptcy protection, the commissioner made clear that he would "entertain any motions or requests for orders against [Raymark] prior to any order" against the fund pursuant to § 31-355 once the plaintiff obtained relief from the stay or

Raymark exited bankruptcy.[29] Significantly, the reasons for appeal accompanying the fund's petition to the board, after issuance of the supplemental order, related only to decisions made in connection with the September 30, 2005 order.[30] Thus, the fund should not have waited until after the issuance of the supplemental order to file its appeal to the board, or otherwise preserve its right to challenge, the decision issued more than one year earlier, which became final by virtue of that failure. See General Statutes § 31-300.

Finally, the rule of practice applicable to the deferral of appeals, namely, Practice Book § 61-5; see footnotes 6 and 28 of this opinion; supports our conclusion that the fund was required to preserve its right to appeal from the commissioner's September 30, 2005 decision. Section 61-5 specifically contemplates decisions like that rendered on September 30, 2005, which had concluded that none of the carriers were liable for the benefits herein, as that rule requires the filing of a notice of intent to appeal when the "deferred appeal is to be taken from a judgment that not only disposes of an entire complaint, counterclaim or cross complaint but

---

[29] Thus, we disagree with the fund's contention that an appeal from the September 30, 2005 order would have been premature because it was not aggrieved, and "it lacked proper standing to initiate an appeal" inasmuch as there was a "strong probability," but not a "legal certainty" that an order pursuant to § 31-355 would issue. It is well established that a party need not have suffered a certain injury in order to be aggrieved for purposes of taking an appeal. See, e.g., *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, supra, 275 Conn. 370 ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" [internal quotation marks omitted]).

[30] Although one of the fund's proffered reasons of appeal in its petition to the board is that the commissioner improperly denied the fund's motion to correct dated November 8, 2006, the substance of that motion to correct related in its entirety to the September 30, 2005 finding and award. Indeed, although the commissioner did not give reasons for his denial of the motion to correct, we note that the plaintiff and the carriers supported their objections to that motion by arguing, inter alia, that it was untimely.

also disposes of all the causes of action brought by or against a party or parties so that that party or parties are not parties to any remaining complaint, counterclaim or cross complaint . . . ." Practice Book § 61-5 (a) (1). Indeed, if the fund were to file a notice of intent to appeal, the carriers would have the opportunity to object to any such deferral, and, therefore, accelerate receipt of a final determination with respect to their role in the case. See Practice Book § 61-5.

As a consequence of the fund's failure to timely file an appeal pursuant to § 31-301 (a), or otherwise preserve its appellate rights under Practice Book § 61-5, the board lacked subject matter jurisdiction over the fund's appeal. See *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 10 A.3d 1 (2010). The Appellate Court, therefore, properly affirmed the board's order of dismissal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.